## MAIL COMPANY *v.* FLANDERS.

1. The Circuit Court of the United States has no jurisdiction under the act of March 12th, 1863, commonly known as the Abandoned and Captured Property Act, where both parties are citizens of the same State.
2. Although when a court has no jurisdiction it is. in general irregular to make any order, except to dismiss the suit, that rule does not apply to the action of the court in setting aside such orders as had been made improperly before the want of jurisdiction was discovered, and restoring things to the state in which they were before the improper orders were made.

APPEAL from the *Circuit Court* for the Eastern District of Louisiana; the case being this:

The act of March 12th, 1863,* known as the Abandoned or Captured Property Act, directed that property abandoned or captured within the region lately in insurrection, should be turned over to agents of the Federal treasury, and by them sold at auction, and the proceeds paid into the treasury of the United States, &c.    The act goes on to say:

" Any person claiming to have been the owner of any such abandoned or captured property may prefer his claim to the proceeds thereof *in the Court of Claims;* and on proof to the satisfaction of said court (1) of his ownership of said property, (2) of his right to the proceeds thereof, and (3) that he has never given any aid or comfort to the present rebellion, receive the residue of such proceeds."

No special jurisdiction in the matter was given by this statute to the Circuit Courts, which if they had jurisdiction at all after the above-quoted provision from the statute, had it only under the Judiciary Act of 1789, which gives them (§ 11) jurisdiction where " the suit is between a citizen of the State where the suit is brought and a citizen of another State."

With these statutes in force, the New Orleans Mail Company, *a corporation of Louisiana,* filed a bill in the nature of

---

* 12 Stat. at Large, 820.

a bill in equity, in the court below, against B. F. Flanders, a treasury agent, and one Fernandez, an auctioneer, *both defendants, as appeared on the face of the pleadings, being citizens of Louisiana*, setting forth that Flanders, pretending to proceed under the said Captured and Abandoned Property Act, had seized two steamboats, the one named Laurel Hill, the other Iberville, and that Fernandez, as auctioneer, was now about to sell them; and praying an injunction against the sale; praying also a writ of sequestration to the marshal, commanding him to keep the boats until the further order of the court. A preliminary injunction and a writ of sequestration were granted accordingly.

The defendant, Flanders, filed an " answer and plea to the jurisdiction," setting up that the steamers were *captured property;* that as such they had been delivered by the military authorities to him, as special agent of the treasury, under the act of Congress; and that he held the boats, and had advertised their sale, in his official capacity. He denied that the Circuit Court had any jurisdiction of the case made in the petition, on the ground that, by the act of March 12th, 1863, the Captured and Abandoned Property Act, the entire jurisdiction of that case was vested in the Court of Claims. He therefore prayed that the petition be dismissed.

The court entered a judgment thus:

" For reasons *orally assigned*, it is ordered that the injunction herein sued out be made perpetual so far as the steamer Iberville is concerned, and that said steamer be restored to the plaintiffs.

" But as regards the steamer Laurel Hill, *considering that the court is without jurisdiction*, it is further ordered that the injunction and sequestration be set aside and *dismissed* with costs, and that said steamer be turned over to B. F. Flanders, agent of the treasury department, as captured property."

As this judgment was rendered " for reasons orally assigned," the grounds of this discrimination between the cases of the two vessels did not appear, nor the ground on which the court supposed it had any jurisdiction whatever

of the suit against the Iberville more than against the other.

From the judgment, in respect to the Laurel Hill, the mail company took this appeal. Of course, as the other vessel was restored to them by the judgment of the court, they had no ground of complaint against the decree in respect to *her*, and the other side not appealing, there could be no question as to the judgment given in respect to that vessel.

. The case was submitted; *Mr. Evarts declining to press the case for the appellant,* as being a plain one against him.

*Mr. Hoar, for the United States, represented here by the appellees.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Authority was conferred upon the Secretary of the Treasury, by the act of the twelfth of March, 1863, to appoint special agents to receive and collect abandoned or captured property in any State or Territory designated as in insurrection, by the proclamation of the President issued on the first day of July in the preceding year. Such property, so received or collected, may be appropriated to public use on due appraisement and certificate thereof, or may be forwarded for sale within the loyal States as the public interest may require; and the further provision is that all sales of the property shall be at auction to the highest bidder, and that the proceeds thereof shall be paid into the treasury.*

Officers or privates in the army, and officers, sailors, or marines in the navy, are required by the sixth section of the act to turn over to an agent appointed under that act, all property taken or received from persons in such insurrectionary districts, or which they have under their control; and the same section also provides that the agent receiving such property shall give a receipt for the same to the person from whom it was received.†

Two steamboats, to wit, the Laurel Hill and the Iberville, were captured by our military and naval forces at New Or-

---

* 12 Stat. at Large, 820.                    † Ib. 821.

leans, in the month of May, 1862, shortly after our military occupation of the city became complete.    Carefully examined the proofs show that the Laurel Hill was captured on the eighth of May of that year, in Bayou Jacquot, a small bayou connected with Bayou Plaquemines, situated in the parish of Iberville, on the right bank of the river Mississippi, one hundred miles above the city of New Orleans, and at that time within the military lines of the Confederate army.    Our military occupation of the city became complete on the sixth of May of that year, and the proofs show the Iberville was captured on the twenty-second of the same month while lying at Greenville, which is situated on the left bank of the river, four and a half miles above the city, but below Camp Parapet, and was at that time within our military lines.

Captured under the circumstances explained, the two steamboats remained in the custody or subject to the control of our military authorities until the twenty-first day of December, 1865, when the proper officer in charge of the same turned the captured steamers over to the respondent, B. F. Flanders, as the agent of the Treasury Department appointed under the first section of the before-mentioned act of Congress.    Pursuant to authority conferred by the second section of the act, the respondent, Flanders, employed the other respondent as an auctioneer to sell the steamboats, and the latter, by virtue of his employment, advertised the same for sale at public auction.

Based on these facts the complainants and appellants, on the ninth of January, 1866, filed their bill of complaint in the Circuit Court of the United States, and alleged that they were the lawful owners of the respective steamboats; that the respondents had no right, interest, or claim in the same, and that a sale of the same as proposed would be a violation of their rights as such owners.    They brought the suit to prevent the sale of the steamboats as proposed in the advertisement, and they accordingly prayed for an injunction to that effect, and they also prayed for a writ of sequestration, to be directed to the marshal, commanding him to take the steamboats into his possession and to safely keep the same

until the further order of the court. Accompanying the bill of complainant was an affidavit of merits, and the record shows that both writs were granted as prayed, the complainant's giving bond to the respondents to pay all such damages as should be adjudged against them if the processes were wrongly obtained.

Service having been made, the respondent, Flanders, appeared and filed an answer. He alleged that the steamers were captured by our military and naval forces, as before explained, and that he held the same as special agent of the Treasury Department. Besides pleading to the merits as aforesaid, he denied the jurisdiction of the court, and also prayed that the injunction might be dissolved and that the bill of complaint might be dismissed. Testimony was taken, but further reference to it is unnecessary, as all the facts proved which are material in this investigation have already been stated. None of the other proceedings in the suit are of any importance in the present state of the controversy, except the final decree, which was to the effect as follows: (1) That the injunction in respect to the steamer Iberville be made perpetual, and that the steamer be restored to the complainants. (2) That the orders granting the writs of injunction and sequestration in respect to the steamer Laurel Hill be set aside, with costs, and that the steamer be restored to the respondent, Flanders, as the special agent of the Treasury Department.

Probably the decision in the matter of the steamer Iberville was placed upon the ground that the steamer was captured within our military lines subsequent to the publication of the proclamation issued by the commanding general at the headquarters of the army, announcing that "all the rights of property, of whatever kind, will be held inviolate, subject only to the laws of the United States."[*]

Much difficulty, to say the least, would have arisen in sustaining that part of the decree if the respondents had ap-

---

[*] The Venice, 2 Wallace, 276; The Circassian, 2 Id. 150.

pealed to this court, as the presiding justice held that the Circuit Court had no jurisdiction of the case, but inasmuch as that part of the decree was in favor of the appellants, and the respondents did not appeal, the error, if it be one, cannot be corrected. Correction of the error is not sought by the appellants, and it is well-settled law that no one but an appellant can be heard in an appellate court for the reversal of a decree rendered in the subordinate court.* Appellees may be heard in support of the decree, but not for reversal, as it is the privilege of both parties to appeal if they see fit and comply with the conditions prescribed by law.†

Captured as the steamer Laurel Hill was, within the military lines of the Confederate army, the proclamation of our commanding general, before referred to, afforded no support to that part of the claim of the complainants, but the presiding justice being of the opinion that the Circuit Court had no jurisdiction of the case, did not examine the merits of the controversy. Both parties, as appears on the face of the pleadings, are citizens of the same State, and upon that ground this court is of the opinion that the bill of complaint was properly dismissed for want of jurisdiction.‡

Where the Circuit Court is without jurisdiction it is in general irregular to make any order in the cause except to dismiss the suit, but that rule does not apply to the action of the court in setting aside such orders as had been improperly made before the want of jurisdiction was discovered. Prior to that the court, on motion of the complainants, had granted an injunction and issued a writ of sequestration, on which latter writ the marshal had taken possession of the steamer and held it subject to the order of the court. Evidently those writs were improvidently issued, and the

---

* The Mary Ford, 3 Dallas, 198.

† The William Bagaley, 5 Wallace, 412; Chittenden v. Brewster, 2 Id. 196; Harrison v. Nixon, 9 Peters, 484; Stratton v Jarvis, 8 Id. 4; Buckingham v. McLean, 13 Howard, 150; Canter v. Am. Ins. Co., 3 Peters, 318.

‡ 1 Stat. at Large, 78; Sullivan v. Fulton Steamboat Co., 6 Wheaton, 450; Piquignot v. Pennsylvania Railroad Co., 16 Howard, 104; Hornthall v. Collector, 9 Wallace, 560.

court having come to that conclusion set them aside and ordered the steamer restored to the custody in which it was when the writ of sequestration was served.

DECREE AFFIRMED.*

---

* This decree was made at the last term.