Mr. Justice Hagner
delivered the opinion of the Court:
The defendant was indicted in the Criminal Court in June, 1888, for a violation of the first section of the Act of April 29, 1878 (20 Stat., 39), entitled “An.act to prevent, the sale of policy or lottery tickets in the District of Columbia.” This section declares;—
“'That if any person shall, within the District of Columbia, keep, set up, or promote or be concerned as owner, agent, clerk, or in any other manner, in managing any policy-lottery or policy-shop, or shall sell or transfer any ticket, certificate; bill, token, or other device, purporting or intending to guarantee or assure to any person,‘or entitle-him to a chance of drawing or obtaining a prize, or share of, or interest in, any prize to be drawn in any lottery, or in the game or device- commonly known as policy-lottery or policy ; or shall, for himself or another person, sell or transfer, or have in possession for the purpose of sale or transfer, or shall aid in selling, exchanging, negotiating, or transferring a chance or ticket in, or share of a ticket in, any policy-lottery, or any such bill, certificate, token or other device, he shall be deemed guilty of a misdemeanor,, and upon conviction thereof shall forefeit and pay á fine of not more that $500 or be imprisoned in the District Jail not less than two months or more than one year, or both, at the discretion of the court.”
The defendant interposed a plea to the jurisdiction of *236 the court, which was overruled; and having been convicted by the jury, he moved in arrest of judgment and assigned •as reasons for the motion—
“First. That exclusive original jurisdiction of the said offense is by lawvested in the Police Court of the District •of Columbia.
“Second. -That the Supreme Court of the District of Columbia, in criminal term, has no original jurisdiction of the .said offense.”
The motion was certified here by the trial justice, and has been heard by us in the first instance.
It appears by stipulation that on June 6,1888, an inform - .ation was filed against the defendant in the Police Court, charging him with the same violation of the statute; and when arraigned there he pleaded not guilty, and demanded a jury trial; and thereupon the Attorney of the United States proceeded to examine ‘witnesses in support of a warrant which had been filed in the Police Court, charging ■the defendant with the same offense, and the court required him to give bail to answer the charge in the Criminal •Court. Báil was given, and this indictment was returned by the grand jury.
The defendant, to show that the Criminal Court has no ■original jurisdiction to punish any violation of the statute in question, but that the exclusive power to do so is vested in the Police Court, relies upon Section 1049, Article 33, of the Revised Statutes District of Columbia-, which was taken from Sec. 1 of the Act of 1870, Chap. 133, and reads thus:
“The Police Court shall have original and exclusive .jurisdiction of all offenses against the United States committed in the District not deemed capital or otherwise infamous crimes, that is to say, of all simple assaults and batteries and all other misdemeanors not punishable by imprisonment in the penitentiary; and of all offenses against the laws -and ordinances of the District in force therein.”
*237 As.the offense is, by the terms of the Act of 1878, constituted a misdemeanor and punishable by confinement in the jail, and not in the penitentiary, this position seems to be sustained by the words of the section; but to arrive at. its proper construction it is necessary to examine other portions of the article, together with the statutes relating to the jurisdiction of the Supreme Court of the District as. construed by this Court and by the Supreme Court of the United States.
Ity Section 3 of the Act establishing the Supreme Court of the District, (1863, Ch. 91, 12 Stat., 763,) it was declared, that “any one of the justices of said court may hold a criminal court for the trial of all crimes and offenses arising within said District, which court .shall possess the same-powers and exercise the same jurisdiction now possessed by the Criminal Court of the District of Columbia.”
Under this section the entire jurisdiction for the trial of all crimes and offenses was undoubtedly vested in the-Criminal Court, as a special term of this court. Seven years afterwards, the Act of 1870, Ch. 133, creating the Police Court, was passed, which carved out of this general jurisdiction so much thereof as Congress designed (and had the right) to confer upon that tribunal. By Section 3 of that Act it was declared “that prosecutions in said Police-Court shall be by information under oath, without indictment by grand jury, or trial by petit jury;” but any party-deeming himself aggrieved by the judgment of said court-might appeal to the Criminal Court, where the case should be tried by a jury as though it had originated there. Sec. 773, R. S. D. C.
This provision, read in connection with the preceding general grant of jurisdiction to the Police Court, must be construed as giving jurisdiction to that court only in “misdemeanors not punishable by imprisonment in the penitentiary,” in which the party accused was not entitled, of right, to a trial by petit jury. In the latter cases, the Police, *238 Court could not be said to have jurisdiction, because it was powerless, by the express words of the enabling statute, to try or hear them by a jury after they were called; and no •court can properly be said to have jurisdiction of a cause unless it has the right to decide every question that may •occur in the trial. Peck et al. vs. Jenness et al, 7 How., 624; Grignon et al. vs. Astor et al, 2 How., 319 ; Cornett vs. Williams, 20 Wall., 24.
Where a com! is without jurisdiction, it is in general irregular to make any order in the case but one to dismiss the suit; except to set aside such order as hád been improperly made before the. want of jurisdiction was discovered. Mail Co. vs. Flanders, 12 Wall., 135.
Hence the jurisdiction of the Criminal Court was loft unimpaired in such misdemeanors as of right were triable by a petit jury; precisely as it was in cases where, by law, the misdemeanor was punishable by confinement in the penitentiary.
The Supreme Court of the United States, in Callan vs. Wilson, 127 U. S., 540, examined the legality of a prosecution in the Police Court for conspiracy, and determined that the reservation of a right to a jury trial upon appeal to the Criminal Court, is not a gratification of the inviolate right to a jury trial guarantied by the third Article and the fifth and sixth Amendments of the Constitution, in cases of the gravity and importance of the prosecution then before them. The court cites with approval the decision of Mr. Justice Blatchford, in re, Dana, 7 Benedict, 14, in which it w^as determined that a prosecution for libel could not be sustained in the Police Court, because that class of offenses was, and had always been, triable by a jury; and the accused w^as “ entitled not to be first convicted by a court and then to be acquitted, but to be convicted or acquitted in the first instance by a jury.”
Of course these provisions of the Constitution were designed only to embrace such prosecutions as at the time of *239 its adoption, by the course of the law, were triable, of right, by a jury.
There was at that time and always liad existed a class of criminal cases which were proceeded against summarily and without the intervention of a petit.jury. To this class of prosecutions these constitutional provisions had no application. The power to dispose of them summarily was undoubted.
The Court of Appeals of Maryland, in State vs. Glenn, 54 Md., 605, says: “In England, notwithstanding the provisions in the Magna Charta of King John, Art. 46, and in that of 9 Hen. III, Ch. 29, which declares that no freeman shall be taken, imprisoned or .condemned ‘ but by the lawful judgment of his peers, or the law of the land,’ it has been the constant course of legislation in that kingdom, for centuries past, to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for minor and statutory police offenses. And where it is declared that the party is entitled (under the constitution of Maryland) to a speedy trial by an impartial jury, that must be understood as referring to such crimes and accusations as have by the regular course of the law and the established modes of procedure, as theretofore practiced, been the subjects of jury trial. It could never have been intended to embrace every species of accusation involving either criminal or penal consequences.”
Mr. Justice Harlan speaking for the Supreme Court, in Callan vs. Wilson, says:
“Except in that class or grade of offenses called petty offenses, which, according to the common law, may be proceeded against summarily in any tribunal regularly constituted fpr that purpose, the guaranty of an impartial jur£ to the accused in a criminal prosecution conducted either in the name of, or under the authority of, the United States,, secures to him the right to enjoy that mode of trial from the first moment, in whatever court he is put on trial for the offense charged.
*240 “ Without further reference to the authorities and conceding that there is a class of petty or minor offenses not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury, and which, if committed in this District, may, under the authority of Congress, be tried by the court and without a jury,, we are of the opinion that the offense with which the appellant is charged does not belong to that class.”
In the light of these decisions, the Police Court when organized, had no jurisdiction to enter upon the trial of any misdemeanor which by the course of the common law, or by reason of its gravity or importance was property triable by a jury. It would have been a cruel travesty of justice to enact that a party charged with a serious misdemeanor, although punishable by confinement in a jail instead of the penitentiary, but of a character always triable by a petit jury, should be tried on information in the Police Court; and by the same statute to declare that prosecutions in the court should be conducted without a trial by petit jury, the only agency authorized by the course of the law to determine such case. We are bound to conclude that Congress intended to enact no such contradictory provisions.
It results that when a party is indicted in the Criminal Court for a misdemeanor punishable by imprisonment in the jail, it becomes the duty of that court to ascertain whether the offense charged belongs to the class of offenses, of right triable by a petit jury, or whether it belongs to the class of petty or more trivial breaches of law or of statutory police regulations. If it shall determine that the charge belongs to the former class, it should proceed to hear the case; if to the latter, then the jurisdiction to try it upon information having been confided to the Police Court, it should be tried there.
Addressing ourselves to this inquiry in the case before-us, we are clearly of the opinion that violations of the Act *241 of 1878 cannot be considered trivial or petty offenses; or breaches of mere police regulations. The punishment inflicted by the act may extend to a fine of $500, and imprisonment in the jail■ for one year for each offense; h weighty sentence to be imposed without a jury trial, by a police court, evidently constituted to try minor offenses. In every State where similar statutes have been passed, the offense is cognizable by a court provided with a petit jury. Although formerly permitted by law, and even encouraged, public opinion for nearly half a century almost everywhere in this and all civilized countries has recognized lotteries as fruitful sources of unmitigated mischief; as a cunning scheme by which crafty knaves plunder the silly and credulous; destructive of thrift and honest industry, and pandering to idleness and vice. Tile sale of lottery tickets has been forbidden in this District for nearly half a century, under heavy penalties, and any contract respecting their sale is declared void; and the general statutes of the United States forbids the transmission by mail of any matters connected with their sale. The keeping of a shop within this District for the sale of lottery or policy tickets, is something affecting the entire country; and Congress undoubtedly was impressed with the seriousness of the evil when it passed the Act of 1878, and affixed the severe penalties prescribed in that statute.
To deny the accused the safeguard of a j ury trial on such a charge would he a departure from the practice of the criminal law in cases of such gravity.
It has been insisted on behalf of the defendants that this ruling is inconsistent with the decision of this court in United States vs. Marshall, 6 Mackey, 34, in which it was held the Police Court had jurisdiction of a charge of keeping a bawdy-house. That decision was rendered on the 11th of July, 1887. In accordance with it, the General Term refused to discharge, upon habeas corpus, Callan and others, musicians, who had been convicted in the Police Court of a *242 conspiracy to “boycott” others engaged in the same occupation. But the Callan decision was reversed by the Supreme Court in May, 1888 (127 U. S., already referred to), and so far as that case differs from Marshall’s Case, the former must prevail. In Buell’s Case, 1 MacA., 502, the General Term in 1874 had determined that the Police Court had no jurisdiction in libel; as was decided by Justice Blatchford in Dana’s Case, approved by the Supreme Court-in 127 U. S.; and although one of the grounds of the decision in Buell’s, Case, viz., that the defendant might have been punished in the penitentiary, was undoubtedly incorrect, the reasons assigned by Justices Humphreys and Wylie, in their concurring opinions are fully in accord with the decision of the Supreme Court in the Callan Case.
The further contention of defendant’s counsel that the decision in Callau’s case “expends itself upon the mode of trial heretofore had in that court,” so that the jurisdiction of the Police Court remains undisturbed, though there is no present means of exercising it, for want of a jury, is untenable. It is impossible to conceive of a court having jurisdiction of a case it is unable to try. But while the text of Justice Harlan’s opinion in the Callan Case does not explicitly say the Police Court was without jurisdiction to try a person accused of a misdemeanor which by the course of the law was triable by a jury, it cannot be questioned that the court necessarily decided, as stated in the syllabus of that case, that the Police Court is without constitutional power to try, convict and. sentence to punishment a person accused of a conspiracy, notwithstanding the accused m-aj^ obtain a jury trial on appeal. This would bo in effect, a denial of jurisdiction to the Police Court in that and similar cases. The jurisdiction in that class of cases never having been taken from the Criminal Court by the act creating the Police Court, it of course remains with it still.
Our attention is called to the changes made since 1870 in the language of the Act of 1863 creating the Supreme *243 'Court of the District of Columbia, by legislation which it •was insisted had diminished in some way its criminal jurisdiction. The changes referred to, in our opinion, can have no such effect.
We have seen that the Act of 1863, Ch. 91, Sec. 3, gave to the Supreme Court all the jurisdiction for the trial of all urimes and offenses arising within the District which was possessed by the old Criminal Court, and this grant remained unchanged in words until the adoption of the Revised Statutes on June 22, 1874. In Section 763, the language was thus printed in the revision: “Any one of the justices may hold a Criminal Court for the trial of all crimes and offenses arising within the District.” But on-.the day the revision was adopted, (six days before the Secretary of State had given the certificate required by the Act of Congress authenticating the revision, and a year before it was’printed), the’ Act of 1874, Ch. 396, was passed, entitled: “An Act conferring jurisdiction upon the Criminal Court of the District of Columbia and for other purposes,” which declared “That the Criminal Court of the District of Columbia shall have jurisdiction of all crimes and misdemeanors committed in said District not lawfully triable in-any other court, and which are required by law to be prosecuted by indictment or information.”
It is probable Congress may have thought the language of Section 763, as found in the revision giving the Criminal Court jurisdiction “to try all crimes and offenses arising within the District,” might be considered as not as broad as the original grant in the Act of 1863, which had especially given-to it all the power possessed by the old Criminal Court, and for that reason concluded to pass the Act of 1874, Ch. 396, which, as its title shows, was to confer jurisdiction upon the present Criminal Court. And this provision -was part of the law before Section 763 was printed, in 1875.
The section as thus amended seems to confer as full *244 authority upon the Criminal Court as the original Act of' 1863. The only limitation upon its jurisdiction was that it should not extend to cases “ lawfully triable in any other-court.”
The other change referred to was that effected by Section 2 of the Act of February 27, 1877, Ch. 69, entitled “An Act to perfect the revision of the statutes of the United States, and of the statutes relating to the District of Columbia.” The eleventh paragraph of that section declares that Section 763 is amended by striking out said section and inserting in lieu thereof the following as Section 763:
“Said Court shall have cognizance of all crimes and offenses committed within said District; and of all cases at. law and equity between parties both or either of which shall he resident or shall be found within said District; and also of all actions or suits of a civil nature at common law or in equity, in which the United States shall be plaintiff or complainant; and of all seizures on land or water; and all penalties or forfeitures made, arising or accruing under the laws of the United States; and any one of the justices may hold a criminal court for the trial of all crimes and offenses within said District.”
This Act recognizes the jurisdiction of the Criminal Court in the amplest manner, as comprehending all crimes and offenses committed within the District. Neither of these changes, therefore, diminished the jurisdiction of the Criminal Court.
It is contended by the District Attorney that the Act of 1877 repeals Chapter 393 of 1874, and that the limitation therein to cases “ not lawfully triable in any other court ” has disappeared. But we cannot assent to this view. The Act of 1874-was not stated to be an amendment of Section 763; and in addition to the above language found in its first-section, it contained in Section 2 an important provision declaring that Section 33 of the Judiciary Act shall be applicable to the Courts of the District of Columbia. It is *245 'impossible to suppose that Congress intended to repeal this provision of the law of 1874 by the Act of 1877; nor do we think it repealed other portions of the former act.
The effect of all the existing statutes on the subject, in our opinion, is to give undoubted jurisdiction in the present case to the Criminal Court.
The objection that we should not recognize the force of the provision in the Act of 1877, because it is “ concealed under the cloak of a correction of errors,” is not tenable. Whether the course is a wise one it is needless to consider; but we know that most important changes in general laws have been frequently made in the form of additions to appropriation bills, or to other acts not germane to their general subject. Such was the case with the two important provisions respecting the testimony of parties and persons interested in suits, which have been so frequently sustained by the court.

Upon the whole case, ive think the motion in arrest should he .overruled; and it is so ordered.