THE JOHN C. SWEENEY.

CHARLESTON BRIDGE CO. v. THE JOHN C. SWEENEY et al.

(District Court, E. D. South Carolina. April 25, 1893.)

1. JURISDICTION—MOTION TO DISMISS AFTER HEARING.
    A motion to dismiss a libel in rem in admiralty may be made although a full hearing has been had on the merits, with testimony and argument.

2. SAME—ADMIRALTY—COLLISION WITH DRAWBRIDGE.
    Courts of admiralty have no jurisdiction over torts committed on water but resulting in damage upon land, and cannot entertain a libel in rem by

a bridge company owning a bridge built on piers, with a draw swinging on the center pier, against a schooner for damages caused to the bridge by colliding therewith.

In Admiralty. Libel in rem by the Charleston Bridge Company against the schooner John C. Sweeney and others for damages to a bridge. On motion to dismiss for want of jurisdiction. Granted.

Bryan & Bryan, for the motion.

J. F. Ficken, Mitchell & Smith, and J. N. Nathans, opposed.

SIMONTON, District Judge. The libel in this case was filed in rem for injuries to the bridge of libelant, caused by the schooner running into it. It was tried with a libel in personam by the master of the schooner for injuries to her, received at the same time, and growing out of the same collision. 55 Fed. Rep. 536. The libels were in tort. A full hearing was had, with testimony and argument. After consideration, the libel in rem was sustained, and the libel in personam was dismissed. After opinion filed, but at the same term, respondent in the libel in rem moves to dismiss that libel for want of jurisdiction.

The first question is, can this motion be now entertained? The question of jurisdiction of the court can be made at any time, (Railway Co. v. Swan, 111 U. S. 382, 4 Sup. Ct. Rep. 510;) indeed, can be made after decree below and writ of error, for the first time in the supreme court, (Capron v. Van Noorden, 2 Cranch, 126; King Bridge Co. v. Otoe Co., 120 U. S. 226, 7 Sup. Ct. Rep. 552.) In Mail Co. v. Flanders, 12 Wall. 130, the circuit court had granted an injunction and had issued a writ of sequestration, on which latter writ the marshal had taken possession of a steamer, and held it subject to the order of the court. No question of jurisdiction had been made until after this was done. The supreme court sustained the action of the circuit court in setting aside the injunction and the order of sequestration and restoring the property, when want of jurisdiction was made to appear. Where the record discloses a controversy of which the court cannot take cognizance, its duty is to proceed no further; and this it can do on its own motion, if need be. Morris v. Gilmer, 129 U. S. 325, 9 Sup. Ct. Rep. 289. This case distinguishes Hartog v. Memory, 116 U. S. 591, 6 Sup. Ct. Rep. 521, which at first blush would seem to limit this doctrine. It must be noted also that the decretal order in this case has not yet been filed. The present motion is analogous to a motion in arrest of judgment. The motion is to dismiss the libel in rem because on its face it shows that the injury complained of is not within the jurisdiction of a court of admiralty. The libel sets out that libelant is the owner of a bridge constructed and located and extending from a point near the extreme west end of Spring street, in the city of Charleston, across Ashley river, in the said state, to the opposite shore; that the schooner collided with said bridge, striking first the eastern fender at or near the southernmost part of the draw opening, and then lurching over and striking against the center or draw pier, thereby causing great damage or injury to the bridge. The bridge is built on piers. The draw swings on a center pier, resting on the bottom of the river.

The proof sustaining the libel is that the schooner, entering the draw, sheered to starboard, striking and glancing from the fender, and crossing to the other side of the draw, driving her bowsprit into the iron work of the bridge, tearing it away, and breaking the drawbridge by force of the collision against the center pier. She was afloat in a navigable stream from the beginning to the end of the accident. Is this case within the jurisdiction of admiralty? The jurisdiction in admiralty over tort depends exclusively on the locality. Thomas v. Lane, 2 Sum. 9. This whole case depends upon the determination whether this means the locality of the damage complained of, or whether the locality of the instrument causing the damage can be taken into consideration. "To ascertain what the maritime law of this country is, * * * we must have regard to our own legal history, constitution, legislative usages, and adjudications. The decisions of this court illustrative of these sources and giving construction to the laws and constitution are especially to be considered, and when these fail us we must resort to the principles by which they are governed. But we must always remember that the court cannot make the law; it can only declare it. If within its proper scope any change is desired in its rules, other than those of procedure it must be made by the legislative department. The Lottawanna, 21 Wall. 576, 577. The supreme court, in The Plymouth, 3 Wall. 20, discusses this question. A steamer anchored beside a wharf on a navigable stream took fire from the negligence of her crew. The fire communicated itself to the wharf, and consumed several large package houses thereon, with their valuable contents stored therein. The parties damaged filed a libel against the steamer in rem. The case was most ably and fully argued in the supreme court. The counsel for the libelant presented every view in favor of the jurisdiction which can be presented in a clear, precise, and elegant argument. The libel was dismissed (Mr. Justice Nelson speaking for a unanimous court) on the ground that the injury complained of occurred on the land. The opinion responding to the argument says: "We can give no particular weight or influence to the consideration that the injury in the present case originated from the negligence of the servants of the respondents on board of a vessel, except as evidence that it originated on navigable waters, —the Chicago river; and, as we have seen, the simple fact that it originated there, but the whole damage done upon land, the cause of action not being complete on navigable waters, affords no ground for the exercise of the admiralty jurisdiction. The negligence of itself furnishes no cause of action; it is damnum absque injuria." In other words, the cause of action is the injury inflicted on property on land. But for this injury, the action could not lie. The injury being on land, admiralty has no jurisdiction. In Johnson v. Elevator Co., 119 U. S. 397, 7 Sup. Ct. Rep. 254, the jib boom of a vessel in tow of a tug on a navigable stream struck a building on the wharf through the negligence of the tug, causing great damage. A statute of Illinois, in which state the damage occurred, gave a right of action in personam secured by attachment, creating a lien on all water craft over five tons used in navi-

gating the waters of that state, for all damages arising from injury done to persons or property by such water craft, whether aboard the vessel or not, arising from negligence. Action was brought in the state court against the vessel to enforce this lien. The lower court gave the relief sought, and the court of last resort sustained the decision. It was carried to the supreme court on writ of error. The question was on the validity of the statute. It is the settled doctrine of the supreme court that no state statute can authorize suits in rem in a state court against vessels when the causes in action are cognizable in admiralty. The jurisdiction of admiralty is exclusive. The state statute cannot create nor confer admiralty jurisdiction in a state court. The Moses Taylor, 4 Wall. 411; The Hine v. Trevor, Id. 555. The first point for decision, therefore,—one going to the merits of the question,—was whether this cause of action was cognizable in admiralty. Mr. Justice Blatchford, speaking for the court, quotes and approves The Plymouth, 3 Wall. 20, and cites Ex parte Phenix Ins. Co., 118 U. S. 610, 7 Sup. Ct. Rep. 25, and reasserts the doctrine that when the substance and consummation of the wrong takes place on land, and not on navigable water, and when the cause of action is not complete on the water, the remedy belongs wholly to the courts of common law, and admiralty has no jurisdiction. In Ex parte Phenix Ins. Co., 118 U. S. 616, 7 Sup. Ct. Rep. 25, application was made to the district court under the limited liability act. The liability against which protection was sought grew out of communication of fire negligently from a vessel on a navigable stream to buildings on land. The court held distinctly that this was not within the admiralty jurisdiction of the district court, and on this ground alone granted a writ of prohibition. If the court had had jurisdiction, prohibition would not lie. These unanimous decisions of the supreme court, delivered by justices who, by their residence in New York, had ample experience in admiralty practice, leave no alternative to this court. They must be followed. And with but two exceptions the circuit and district courts of the United States maintain the same doctrine. The Arkansas, 17 Fed. Rep. 383, is a case in which the judge expresses an opinion in conflict with the rule laid down by the supreme court. This opinion was quoted with approval in The F. & P. M. No. 2, 33 Fed. Rep. 511. But that case was an action for collision with a raft afloat; and a raft, under these circumstances, is within the jurisdiction of admiralty. Seabrook v. Raft, 40 Fed. Rep. 596; The Rock Island Bridge, 6 Wall. 216. On the other hand, Judge Sherman, in The Neil Cochran, in a libel for damages against a vessel colliding with a swinging bridge, follows The Plymouth, and holds that a court of admiralty has no jurisdiction when the cause of action is negligence on the water and resulting damage on the land. See case in full, 23 Myers' Fed. Dec. 100. Judge Jenkins, in City of Milwaukee v. The Curtis, 37 Fed. Rep. 705, held that a libel in rem would not lie against a vessel for damages caused to a swinging bridge resting on a pier constructed on the bed of the river. See, also, The Maud Webster, 8 Ben. 555.

The text writers formulate this doctrine in accordance with the ruling of the supreme court. Cohen, Adm. 21; Henry, Adm. § 26. Mr. Henry, in his valuable book, while stating the established doctrine, comments upon it as a narrow one, not founded on substantial reason. Counsel in argument have pressed this on the court, and have urged an extension of the jurisdiction. There are two objections to this, each of which seems unsurmountable. One is that the court has not the power to do this. Judge Bradley, in The Lottawanna, quoted supra, says that changes in admiralty law cannot be made by the courts. They must be made by the legislature. This is not a mere matter of procedure. The court is urged to create a maritime lien for injuries done and consummated on land, to declare this inchoate right, and to sustain this libel, which seeks to make such right perfect. The Mayurka, 2 Curt. 77. Mr Justice Curtis, speaking of this maritime lien in The Kiersage, Id. 424, says:

"These privileged liens, constituting a jus in re, which accompany the property in the hands of bona fide purchasers, and operate to the prejudice of general creditors, are matters stricti juris, which cannot be extended from one case to another argumentatively or by analogy or inference. They must be given by the law itself, and the case must be found described by the law. 'Privilegia cum sunt stricti juris nec extendi possunt de re ad rem, nec de persona ad personam.' Even when the court may be of the opinion that the law might be beneficially extended to include cases not described in its terms, it must be left to the legislative power so to extend it."

It is true that the supreme court has at times reversed what seemed to be established principles, and has extended the jurisdiction of admiralty, both as to locality and as to contracts. Notably was this done with the applause of the profession in The Genessee Chief, 12 How. 443, and in Dunham v. Insurance Co., 11 Wall. 1. But in The Genessee Chief the extension of jurisdiction had the sanction of an act of congress, and, indeed, amounted simply to a change in the definition of the term "navigable waters,"—a change rendered imperative by the logic of events. And in Dunham v. Insurance Co. marine policies were declared maritime contracts, the risk against which they gave indemnity necessarily occurring on navigable waters. The other objection is the same suggestion, presented with similar earnestness, and the same force of argument which was pressed on the supreme court in The Plymouth. It did not prevail. Replying to the admission of the appellant's counsel that the case was one of first impression, the court say:

"The reason is apparent, for it is outside of the acknowledged limit of admiralty cognizance over marine torts, among which it is sought to class this. The remedy for the injury belongs to the courts of common law."

With this action of the supreme court, taken after an exhaustive argument, it would be presumptuous to differ. I have come to my conclusion with great reluctance. The case consumed many days on the trial of the merits, and hours were given for argument on the law and the facts. The result of this motion will make this consumption of time useless.

The motion is granted; but, as the motion is made at this stage of the case, the respondent must pay all the costs which accrued anterior to his motion.