(C. D. 356)

MAX SANDHERR, INC. *v.* UNITED STATES

## United States Customs Court, Second Division

(Date June 17, 1940)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE and DALLINGER, Judges; TILSON, J., dissenting

KINCHELOE, Judge: All of these protests were originally filed in the year 1934, and raised the sole claim that the assessment of so-called processing taxes on certain cotton commodities or articles under the Agricultural Adjustment Act of May 12, 1933, was illegal and invalid, on the ground of unconstitutionality. On January 31, 1935, motions were filed in all of these cases to amend the protests by adding the claim that the collector had "erroneously converted the currency of the invoice," etc., under section 518 of the Tariff Act of 1930, reading as follows:

Sec. 518. * * * Under such rules as the United States Customs Court may prescribe, and in its discretion, the court may permit the amendment of a protest, appeal, or application for review. * * *

and Rule 9 (2) of the United States Customs Court, made pursuant thereto, reading:

Rule 9 (2) *Amendment of Pleadings and Motions on Circuits.* If the plaintiff desires to amend his protest, appeal or application for reveiw, as provided in section 518 of the Tariff Act of 1930, he may do so by filing with the judge presiding a motion in writing setting forth the proposed amendment at any time before the case is called for trial.

Such motions to amend protests pending on the calendar at the port of New York, if no objection is made thereto, may be approved by the division of the court having jurisdiction of the subject matter involved, but motions made to amend protests on calendars at ports other than New York, if objection is made thereto, may be passed upon by the judge presiding subject to the approval of the majority of the division having jurisdiction of the subject matter.

At the time of the hearing on the motions of February 14, 1935, the protests were suspended under a suit then pending (No. 4040) from our decision in *Macksoud Importing Co.* v. *United States*, T. D. 48442, on the question of the amendment of a protest. In that case protests had been filed against the action of the collector in assessing duty on certain imported merchandise at 90 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930, and claimed the mer-

chandise properly dutiable alternatively under various other paragraphs of that act. ˙ Subsequently plaintiff sought to amend said protests by adding the claim that the collector had improperly converted the currency of the invoices. It was contended by counsel for the Government, however, that such amendment was a new cause of action filed more than 60 days after liquidation of the duty on the merchandise, under section 514 of said act, and was therefore invalid. In a majority opinion by Division Two of this court it was held that as the new claim pertained to the same merchandise as that covered by the original protests this court had the power and authority to grant such amendment, and did so grant same. Citing *Sweeney & Johnson* v. *United States*, T. D. 45772 (61 Treas. Dec. 1331); *Agfa Ansco Corp.* v. *United States*, T. D. 47217 (66 id. 169). The court then proceeded to decide the protests on the merits, overruling the claim of plaintiff in the original protests, but sustaining the new claim raised by the amendment.

Our appellate court, in deciding said appeal in *United States* v. *Macksoud Importing Co. et al.*, 25 C. C. P. A. 44, T. D. 49041, after reviewing all the cases on the amendment of protests before and under the acts of 1922 and 1930, affirmed the decision of this court, and, in so doing, used the following language:

> Why, then, should the Congress provide for amendments to protests after the United States Customs Court had obtained jurisdiction, unless it was its purpose to give that court the power, in its discretion and under such rules as it might prescribe, to permit, by such amendments, the presentation of new and additional claims, which might have been made in the original protest *as to the merchandise covered by that protest?* We think that that was the purpose of the Congress, and that any other construction of the provisions in question would make them practically inoperable.

This was really confirming the attitude always taken by the majority of Division Two of this court in regard to an amendment of a protest. It happens, however, that in all of the instances in which an amendment was granted the original protest contained at least one claim over which this court had jurisdiction.

In the present case, as already stated, the original protests make the sole claim that the so-called processing (or compensating) tax levied on certain cotton articles under the Agricultural Adjustment Act is unconstitutional, no objection whatever being made to the classification of the merchandise and the assessment of duty thereon under the Tariff Act of 1930.

The Agricultural Adjustment Act was passed May 12, 1933, and under date of September 18, 1935, this court, in the case of *Marshall Field & Co.* v. *United States*, T. D. 47877 (68 Treas. Dec. 272), held that it properly had jurisdiction over the question of so-called compensating taxes on imported cotton articles under said Agricultural Adjustment Act, on authority of *Faber, Coe & Gregg* v. *United States*,

19 C. C. P. A. 8, T. D. 44851, and other cases therein cited. Subsequently, by section 905 of title VII of the Revenue Act of 1936, this court was expressly divested of any jurisdiction under the Agricultural Adjustment Act, which section reads as follows:

SEC. 905. JURISDICTION OF COURTS.

Concurrent with the Court of Claims, the District Courts of the United States (except as provided in section 906 of this title) shall have jurisdiction of cases to which this title applies, regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for limitations under the Judicial Code, as amended, on jurisdiction of such courts based upon the amount in controversy. *The United States Customs Court shall not have jurisdiction of any such cases.* [Italics ours.]

The lack of jurisdiction by this court as a result of the foregoing provision was further established by our appellate court in *United States* v. *Marshall Field & Co.,* 25 C. C. P. A. 308, T. D. 49422. Note also *Lamborn & Co.* v. *United States,* C. A. D. 60. It therefore now is the contention of the Government that as this court no longer has jurisdiction of the sole claim raised in the original protests, it no longer has any right or authority to grant an amendment of said protests at this time.

In this connection it should be borne in mind, however, that the motions to amend the protests herein were made and filed during the year 1935, at which time this court unquestionably had jurisdiction of the subject matter and claim raised by the original protests, as held by us in said T. D. 47877, *supra.* The situation with reference to the amendment of the present protests is therefore really no different from that in the *Macksoud* case, *supra,* so that it still remains a matter within the discretion of this court to grant such amendment, so long as the new protest claim is confined to merchandise covered by the original protests.

This being so, we need then only consider whether there is any good or logical reason why the amendments should not be granted. We can think of no reasonable objection thereto ourselves, and none has been advanced, apart from the fact that since 1936 this court has been without jurisdiction in any matter relating to the Agricultural Adjustment Act. We do not, however, consider that the Revenue Act of 1936 in any way deprived this court of the right, within its discretion, to amend a protest containing a cause of action which was within its jurisdiction at the time the protest was filed, under section 518 of the Tariff Act of 1930, and where the motion to amend was also made before the repealing statute of 1936.

In view of all of which the motions of counsel for the plaintiff to amend the protests herein in the manner hereinbefore mentioned are hereby granted, with an exception to this ruling given to defendant.

DISSENTING OPINION

TILSON, Judge: I am unable to join my Associates at this time in their attempt to grant the motion to amend this protest. At the time this amendment was filed this court was clothed with complete and exclusive jurisdiction of this case, and possessed the power and authority to grant the motion to amend. It is well settled, however, that a court can legally act affirmatively only in a case when it is vested with jurisdiction of the case. As was stated in the case of *The New Orleans & Bayou Sara Mail Co.* v. *Anthony Fernandez,* 12 Wall. 130, 20 L. Ed. 249:

Where the circuit court is without jurisdiction, it is in general irregular to make any order in the cause except to dismiss the suit; but that rules does not apply to the action of the court in setting aside such orders as had been improperly made before the want of jurisdiction was discovered. Prior to that the court, on motion of the complainants, had granted an injunction and issued a writ of sequestration, on which latter writ the marshal had taken possession of the steamer and held it subject to the order of the court. Evidently those writs were improvidently issued, and the court having come to that conclusion set them aside and ordered the steamer restored to the custody in which it was when the writ of sequestration was served.

Decree affirmed.

Referring to cases involving compensating or processing taxes, section 905 of title VII of the Revenue Act of 1936, provides in part as follows:

The United States Customs Court shall not have jurisdiction of any such cases.

It is my view that after the passage of the said revenue act in 1936, divesting this court of jurisdiction of this case, this court was completely stripped of any and all authority and jurisdiction to do anything other than dismiss the case.

My Associates appear to recognize the fact that this court was by said revenue act stripped of all jurisdiction of this case, but express the opinion that the situation with reference to the amendment of the present protests is really no different from that in the *Macksoud* case, 25 C. C. P. A. 44, T. D. 49041. If I were able to agree with my Associates in this latter view I would follow the *Macksoud* decision and join in granting the motion to amend.

At no time during the pendency of the *Macksoud* case before this court, either before or after the amendment therein was offered, did the Congress pass an act whereby this court was expressly divested of jurisdiction in that case, as was done in the instant case.

In the *Macksoud* case this court at all times during its pendency before this court had exclusive and complete jurisdiction of the case. In the instant case, after the passage of the Revenue Act of 1936, and before any action was taken on the motion to amend, this court was deprived of any and all jurisdiction of this case. It is my view,

therefore, that there is no similarity in any respect between the instant case and the *Macksoud* case, and the latter case is no authority for granting the motion to amend in this case.

While the Revenue Act of 1936 does not in explicit words repeal that portion of the Tariff Act of 1930 under which this court derived its jurisdiction of this case, it cannot be denied that the effect of the language employed effectively accomplished that result, so far as jurisdiction of this court of the Agricultural Adjustment Act is concerned. It is immaterial whether the Congress used the words "The United States Customs Court shall not have jurisdiction of any such cases," or whether it used the words "So much of the Tariff Act of 1930 as vests in the United States Customs Court jurisdiction of any such cases is repealed." The net result accomplished in both cases would be the same.

Referring to the jurisdiction and power of courts to act in cases where jurisdiction has been taken away, the Supreme Court of the United States in *Ex parte William H. McCardle*, 7 Wall. 506, 19 L. Ed. 264, said:

> The first question necessarily is that of jurisdiction; for, if the Act of March, 1868, takes away the jurisdiction defined by the Act of February, 1867, it is useless, if not improper, to enter into any discussion of other questions.

> \*　　\*　　\*　　\*　　\*　　\*　　\*

> On the other hand, the general rule, supported by the best elementary writers (Dwarris, Stat. 538), is, that "when an Act of the Legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed." And the effect of repealing Acts upon suits under Acts repealed, has been determined by the adjudications of this court. The subject was fully considered in *Norris* v. *Crocker*, 13 How. 429, and more recently in *Ins. Co.* v. *Ritchie*, 5 Wall. 541, 18 L. ed. 540. In both of these cases it was held that no judgment could be rendered in a suit after the repeal of the Act under which it was brought and prosecuted.

> It is quite clear, therefore, that this court cannot proceed to pronounce judgment in this case, for it has no longer jurisdiction of the appeal; and judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer.

Since this court has been expressly divested of all jurisdiction of this case, prior to the time it acted on the motions to amend, it is my view that this court has no authority or jurisdiction to take any action of any kind, and particularly that it has no authority or jurisdiction to take action which would place life in that which the Congress has declared to be legally dead, so far as this court is concerned.

It is my opinion that this court is without jurisdiction to either grant or deny the motions to amend, or to take any action in the cases, other than to dismiss the same for want of jurisdiction. For the reasons stated I cannot concur in the action taken by my Associates.