Nott, J.,
delivered tbe opinion of tbe court:
This is an action brought to recover tbe net proceeds of forty-seven bales of cotton captured at Atlanta in 1864, amounting, as is alleged, to $30,836. Tbe case has been previously tried, and on tbe former trial we were satisfied that tbe claimant bad never given aid or comfort to tbe rebellion, except that there was a reference in tbe evidence to bis having taken tbe oath of allegiance to tbe rebel government. There were some indications in tbe testimony that tbe act was not voluntary but compulsory, so we sent back tbe case for further testimony, and directed (under tbe former rule of tbe court) that tbe claimant appear and be examined under oath. Tbe point bad not been made by tbe defendants, nor discussed on tbe trial, and this order was strictly *379 to satisfy tbe conscience of tbe court as to an act wbicb might be fatal to tbe casé, or wbicb might be innocent and harmless.
The claimant accordingly came before one of tbe judges of tbe court sitting at chambers on tbe 7th of April, 1868. His testimony was taken, printed, and submitted to tbe other j udges. Subsequently, on tbe adjournment of tbe court, tbe case was restored to tbe docket with other unfinished cases, but not for any defect of proof; and subsequently to this Congress passed tbe Act 25th June, 1868, (15 Stat. L., c. 71, § 4,) prohibiting claimants from being witnesses on their own behalf, and directing that no testimony given by a claimant "shall be used.”
As a matter of fact this deposition of tbe claimant has not been “ used” since tbe act was passed. Being taken before one of tbe judges, and immediately laid before bis associates, and being taken on tbe court’s own motion, and to satisfy its conscience upon a point not controverted and at most obscure, we think it needless to send tbe case back a second time in order that this former and no longer existing doubt may be removed in another way.
Tbe claim in this case is for tbe proceeds of forty-seven bales of cotton. Tbe testimony shows that a son of tbe claimant brought this cotton in from tbe country, where it was concealed, and delivered it to Captain Hade, tbe United States quartermaster at Atlanta. For twenty bales a receipt was given; but for tbe remaining twenty-seven bales no receipt was given, because Captain Hade intended to rebale tbe cotton, and would give a receipt then.
This part of tbe case rests entirely upon tbe testimony of tbe claimant’s son, who was also bis agent, both as to ownership and capture. Tbe amount involved is large; tbe case has been sent back twice with ample opportunity to strengthen it by further testimony. Captain Hade, who appears to have been a faithful, painstaking, and efficient officer, is not a witness, and we are not satisfied, as tbe statute directs we should be, with this proof. It is true that tbe witness' is not contradicted and is not impeached; but bis unsupported testimony in a case where bis father is tbe party in interest, and wherein it appears that be, tbe witness, was tbe owner and factor of various lots of cotton likewise then and there captured, is not proof to the satisfaction of the court.”
As to tbe twenty bales, we think both of tbe counsel in tbe *380 case, and also the Treasury Department, to be somewhat in error, and we have been at some pains to trace out the different parcels which make up- the proceeds of the Atlanta cotton.
The returns of the Treasury Department in these cotton cases consist, first, of copies of the vouchers, accounts and reports of various officers, civil and military, who have had something to do with the seizure or sale; and, second, of statements made up by the clerks in the Treasury Department, secondary in their nature, and resting somewhat on the opinion of the accountant.
In the report transmitted to this court under the hand and seal of the Secretary of the Treasury in this case, February, 1867, it appears the four hundred and forty-seven bales of cotton were turned over in September, 1864, by Captain Hade, the quartermaster at Atlanta, to Captain' Brown, the quartermaster at Nashville. The report then proceeds to show that Captain Brown turned over to Charles A. Fuller, special agent of the Treasury, forty-two bales of cotton, condition good; three hundred and one bales of cotton, condition bad; and two and a half bales of cotton, condition scorched. And the report adds that "this is all the information furnished by the files of this office”
In the subsequent report made in JTain’s Case, May 14, 1868, it is stated that “ out of the cottons forwarded with the aforesaid lots of September, October, and November, upon arrival at Nashville, and before transfer to the.Treasury agent, there were destroyed by fire one hundred and one and a half bales.” The report then proceeds to find the “general average value of the one hundred and one and a half bales of cotton assessed upon the value of the cottons then in transitu, from same direction,” and having done so, mingles, hypothetically, the one hundred and one and a half bales of burnt cotton with the eight hundred and two bales “subsequently sold,” and finds as the net average value of the whole three hundred and fifty-nine dollars and ninety-four cents per’bale. Hitherto, supposing this estimate from the Treasury to be correct, we have allowed that amount per bale in several of these Atlanta cotton cases.
But in looking through the original returns in these reports, we have discovered, by a voucher of Captain Brown’s, that instead of one hundred and one and a half bales of cotton burnt, there were, in fact, one hundred and forty-three and a half; and *381 wby this change to one hundred and one and a half should have been made, for.a time seemed inexplicable.
A clew, however, is. given in the quantity two and a half bales scorched; and a careful comparison of the two quartermasters’ vouchers and returns, has enabled us to give this solution :
The number of bales turned over by Captain Hade to Captain Brown in September was. 447
The clerk who made up this report found that the cotton turned over by Captain Brown át a corresponding period was (as before stated). 42 301
Which amount of. 345J
With that burnt. 143\
Made a total of. 489
And consequently of.:... . 42 more than Captain Brown received.
To balance this account he has arbitrarily cut down the burnt cotton to one hundred and one .and a half bales, and thereby made a false report.
On looking further into the original vouchers and returns of Captain Brown, we find, moreover, that the forty-two bales classed in the report as a part of the cotton received from Captain Hade, did not, in fact, come from Captain Hade, but, on the contrary, are reported.by Captain Brown as “ received from. various sources.” It is also receipted for by the Treasury agent as “good,” while all of the other cotton is receipted for as or as "scorched.” There also appear to have been forty-two bales of cotton which sold at the very high price of seven hundred and nine dollars and sixty-six, cents per bale, and they probably were these forty-two bales marked “good;” for but one lot of forty-two bales appears on the Treasury agents’ reports for July, August, September, October, and November, as coming from Captain Brown. It is, therefore, pretty clear that the imaginary account of the clerk should not stand thus:
*382 Captain Hade to Captain Brown, September, bales. 447
Brown to Fuller, (good)..■. 42
“ “ (bad). 301
“ “ “ (scorched). 2J
Burnt.,.1014
- 447
But should stand:
Brown to Fuller, (bad).■_, 301
“ “ “ (scorched). 2£
Burnt.'. 1434
...... . - 447
And it follows, that instead of one hundred and one and a half bales of burnt cotton being added to and mingled with eight hundred and two bales “then in trcmsitu from the same direction,” there should be one- hundred and forty-three and a half bales deducted from the four hundred and forty-seven bales of cotton sent forward in September by Captain Hade. And it also follows that the • owners of these four hundred and forty-seven bales, instead of recovering a net average of three hundred and fifty-nine dollars and ninety-four cents per bale, (as they have been recovering,) should recover but two hundred and eighty dollars.
. In the case now before us it has been suggested on the one side that the twenty-seven bales said to have been delivered to Captain Hade, formed a part of these four hundred and forty-seven bales; and on the other side, that the twenty bales at the same time delivered to Captain Hade never, in fact, reached the Treasury agent. Both of these suppositions appear to us erroneous. The cotton was delivered to Captain Hade on the 19th or 21st September. The citation from his report contained in the Treasury report in this case says: “September 19th— claimed by a/nd receipt given to Wm. M. Lowry;” but his “ abstract of cvrticles received” from the 15th to the 30th of September, which is given in full in Fain’s Geese, shows that it. was received on the 21st. Referring to the official returns of Captain Brown in Fain’s Case, we find that the last of the four hundred and forty-seven bales were received by him at Nashville on the 23d September, but that twenty bales of cotton were received by him from Captain Hade in October. It is consequently very clear that these twenty-seven bales of the claim *383 ant did not reach Captain Hade until the four hundred and forty-seren hales were on the way to Nashville.
'Deferring next to the reports of the Treasury agent, we find that twenty bales were received by him from Captain Brown; that they were from Atlanta, and that they were the only twenty bales from Atlanta which appear in his reports. These twenty bales also appear to have been shipped by him on the 2oth October, and to have borne the marks D & [S]. The witness, Lowry, has testified that before delivering the cotton to Captain Hade, he marked the twenty bales L in a diamond, and we find other cotton coming from Captain Hade marked D. The letter “L in a diamond” may very easily have been changed by copyists to [S], so that we have little doubt but that the twenty bales receipted for by Captain Hade are the twenty bales reported by the Treasury agent.
This cotton, which was shipped from Nashville on the 25th October, must have reached the general agent at Cincinnati soon afterward. The first sale reported by him after the 17th of that mouth is on the 21st November, when thirty-three' bales sold for fifteen thousand and ninety dollars net, being about four hundred and fifty-seven dollars per bale. The next sale is not till the 19th December, so it is fair to assume that the net proceeds of the claimant’s cotton are almost exactly this average of four hundred and fifty-seven dollars per bale.
The point made by the learned counsel for the defendants that the petition having been filed before the suppression of the rebellion, the suit was prematurely brought, has been considered in another case. (See Padelford’s Case, ante ¶. 319.) '
The judgment of the court is that the claimant recover of the defendants the net proceeds of twenty bales of cotton, being four hundred and fifty-seven dollars per bale, and amounting to the sum of nine thousand one hundred and forty dollars.