Weight, J.,
delivered the opinion of the,court:
During the war with Spain and before April 11, 1899, the date of the exchange of ratifications of the treaty of peace, the island of Porto Rico was occupied bjr the military authorities of the United States, and among other regulations for the government of the island during said military occupation the War Department prescribed the collection of duties on all articles imported into Porto Rico. Officers of the Army were designated to act and did act as collectors of customs of the several ports and enforced the collections of such customs tariff.
On the 27th day of June, 1899, by authority of the War Department, a provisional court for the Department of Porto Rico was established, upon which judicial power was conferred extending to all cases which would be properly cognizable by the Circuit or District Courts of the United States under the Constitution and all common law offenses within certain restrictions; that the decisions of said court should follow the principles of common law and equity as established by the courts of the United States and its procedure, rules, and records should conform as nearly as practicable to those observed and kept in Federal courts; that the j udges of the provisional court be vested with the powers of judges of Circuit or District Courts of the United States; a district attorney should be appointed authorized to present to the court informations against all parties for violations of United States statutes and regulations. With relation to the criminal jurisdiction of the provisional court it was specially ordered that it include all offenses punishable under the statutory laws of the United States.
An information was filed in the provisional court July 13, 1899, against the plaintiff, charging him with the misdemeanor of having smuggled scissors from the United States into the port of Humacao, Porto Rico, on the 29th day of April, 1899, on the schooner Stubbs, with having failed to make entry of the same in the custom-house at said port, and with having illegally imported into Porto Rico from the United States the said goods without having paid the duty thereon, in violation of sections 28G5 and 3082 of the Revised *212 Statutes of the United States. The plaintiff was arraigned in said provisional court upon the information filed against him, and pleaded not guilty, and as 'a defense insisted that the said sections of the Revised Statutes of the United States were without force or effect in Porto Rico on the 29th day of April, 1899. But the court overruled the defense, and adjudged plaintiff guilty of a violation of the statute and gave judgment against him for a fine of $1,500 and imprisonment for one month. The fine was paid and the imprisonment endured.
The plaintiff is a native inhabitant of Porto Rico, and at all times referred to in his petition herein resided and now resides in the town of Humacao, in said island. He brings this suit to recover back the penalty imposed upon him for the alleged violation of the statute referred to.
The chief defense of the Government against a right to recover, urged upon our attention, is the incapacity of the plaintiff to maintain the suit in this court. Plaintiff is a citizen of Porto Rico. He is not an alien to the United States. (Gonzales, 192 U. S., 1.) We discover no prohibition contained in section 1068 of the Revised Statutes to his right to maintain this suit. No other statute has been cited to us, and we know of none to deny to plaintiff such right. We think his right to sue in this court is clear.
The War Department b}^ its order or regulation gave to the provisional court of Porto Rico as the limit of its criminal jurisdiction the statutes of the United States. The court could not itself create new offenses, but could recognize and punish only such as had been defined and declared by the statutes. In giving the court the statutes for its guide relative to criminal jurisdiction, it will be presumed the War Department intended the statutes to be accepted and applied as interpreted by the court of final resort in the United States, so that the statutes could not mean one thing here and something else in Porto Rico. In Dooley v. United States (182 U. S., 235) the court said:
“ Without questioning at all the original validity' of the order imposing duties upon goods imported into Porto Rico from foreign countries, we think the proper construction of that order is that it ceased to apply to goods imported from *213 the United States from the moment the United States ceased to be a foreign country with respect to Porto Rico, and that, until Congress otherwise constitutionally directed, such merchandise was entitled to free entry.”
The case then frees itself to the single point that at the time of the alleged violation of the statute in question, April 29, 1899, the scissors which plaintiff was charged with smuggling were entitled to free entry, and the regulation of the War Department in respect to the collection of customs tariff did not apply to such merchandise. At the time of the alleged offense and at the time of plaintiff’s conviction there was in fact no criminal offense of the kind with which plaintiff was charged and convicted. The statutes limiting and defining the criminal jurisdiction of the provisional court did not extend to or create the offense with which plaintiff was charged and convicted, and for which a penalty was imposed upon him for the ommission to do that which he was not obligated to do either by the statute referred to in the complaint or by the regulation of the War Department. The subject-matter of its judgment never having been confided to it, the court was without jurisdiction, and its judgment was void. The jurisdiction of a court can never depend upon its own decision upon the merits of a case brought before it, but upon its right to hear and decide it at all. (Ex parte Watkins, 7 Pet., 568.) If there is a total want of jurisdiction the proceedings are void and afford no justification, and may be rejected when collaterally drawn in question. (Thompson v. Tolmie, 2 Pet., 157; Rose v. Himely, 4 Cranch, 241; Griffith v. Frazier, 8 Cranch, 9.) Although a court may have jurisdiction over the parties and subject-matter, yet if it make a decree which is not within the powers granted to it by the law of its organization, its decree is void. (United States v. Walker, 109 U. S., 258.) Where a court is without jurisdiction it can not make any order in the cause, except to dismiss the suit, but may set aside orders made before the want of jurisdiction was discovered. (New Orleans and B. S. Mail Co. v. Fernandez, 12 Wall., 130.) Courts of the United States have no jurisdiction over offenses not made punishable by the Constitution, laws, or treaties of the United States (148 U. S., 197) *214 and the Criminal jurisdiction of their courts is wholly derived from statutes of the United States. (Manchester v. Mass., 139 U. S., 240.)
Treating the judgment of the provisional court as void, as it must be, the fact results that the penalty of $1,500 exacted ivas without legal warrant. No greater right existed to demand a penalty for the nonpayment of a customs duty than for the payment of the duty itself. There was no authority of law to demand the one or the other. The defendant received and still retains it. Is there any reason it should not be refunded to plaintiff ? There is none in legal contemplation nor in good morals. In Wisconsin Central Railroad v. United States (164 U S., 212) the court said:
“ Reference was made to Barnes v. District of Columbia (22 C. Cls. R., 366, 394), wherein it ivas ruled, Richardson, C. J., delivering the opinion, that ‘ The doctrine that money paid can be recovered back when paid in mistake of fact and not of law does not have so general application to public officers using the funds of the people as to individuals dealing with their own money where nobody but themselves suffer for their ignorance, carelessness, or indiscretion, because in the former case the elements of agency and the authority and duty of officers and their obligations to the public, of which all persons dealing with them are bound to take notice, are always involved.’ We concur in these views, and are of opinion that there is nothing on this record to take the case out of the scope of the principle that parties receiving moneys illegally paid by a public officer are liable ex aequo et bono to refund them.”
These principles are as forceful in the present case of moneys illegally exacted by public officers as when illegalty paid by them, to which they have been applied in the case cited.
In United States v. State Bank (96 U. S., 35) the court said:
“A party who without right and with guilty knowledge obtains money, of the United States from a disbursing officer, becomes indebted to the United States, and they may recover the amount. An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. ■ The form of the indebtedness or the mode in *215 which, it was incurred is immaterial. (Bayne v. United States, 93 U. S., 642.) * * *
“ But surely it ought to require neither argument nor authority to support the proposition that, where the money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property can not be held by the United States against the claim of the wronged and injured party.”
No implication should be indulged from the use of the quotations we have given that we believe any element of fraud entered into the acts of the members of the provisional court, for we have no doubt they were controlled by pure and honorable intentions, but the result of their unauthorized proceeding was as illegally destructive of the rights of plaintiff as in the case described in the quotations.
It ,is suggested this court has no jurisdiction of the cause because the action is for damages sounding in tort. This same point was before the court and received its judgment in the Dooley case (supra), in which it was said:
“ But whether the exactions of these duties were tortious or not; whether it was within the power of the importer to waive the tort and bring suit in the Court of Claims for money had and received, or upon an implied contract of the United States to refund the money in case it was illegally exacted, we think the case is one-within the first class of cases specified in the Tucker Act of claims founded upon a law of Congress, namely, a revenue law, in respect to which class of cases the jurisdiction of the Court of Claims, under the Tucker Act, has been repeatedly sustained.”
Whether the present case be regarded as founded upon a law of Congress or upon a regulation of an Executive Department is immaterial, as the result is the same in either case, for according to the decision in the Dooley case both classes are put upon the same footing with respect to tor-tious characteristics and the jurisdiction of the court established. In that case the court analyzed the jurisdiction of this court as conferred by the Tucker Act in this manner:
“ The first section evidently contemplates four distinct classes of cases: (1) Those founded upon the Constitution or any law of Congress, with an exception of pension cases; (2) cases founded upon a regulation of an Executive De *216 partment; (3) cases of contract, express or implied, with the Government; (4) actions for damages, liquidated or unliquidated, in cases not sounding in tort. The words ‘ not sounding in tort ’ are in terms referable only to the fourth class of cases.”
The present case is not for damages, liquidated or unliqui-dated, and the question of whether the exaction of the. penalty was tortious or not is not involved in the case.
It should not be the province of the court to hunt ■ for doubts of jurisdiction in a case like this, where all the demands of justice point to the right of plaintiff to be reimbursed the penalty unlawfully exacted. Judgment will be awarded against defendants for $1,500.