Howey, J.,
delivered the opinion of the court:
This cause was transmitted to the court for investigation by proper resolution under the provisions of the act of March 3, 1887 (24 Stat. L., 505), commonly known as the “ Tucker Act.” It was dismissed for want of proof of claimant’s loyalty.
New trial having been granted, the court has given careful consideration to the statute, as well as to all other statutes, bearing upon the investigation of claims within the court’s *24 jurisdiction; the supposed intent of Congress with respect to the enactment under which the claim has been transmitted; the consequences to those bodies should we deny judicial investigation where apparently the court is clothed with power to examine and cross-examine witnesses, thereby immediately and permanently throwing upon Congress the duty of proceeding, if at all, upon the ex parte statements of interested parties at the risk of fraud and imposition upon the Government. The importance of the questions at issue also has been considered, not alone with respect to the right of the claimant, but with reference to the general right of the citizen to avail himself of the means provided by law to be heard on his constitutional right of petition to Congress for the redress of grievances not otherwise remediable and in the way best adapted to make the right available by speedy and certain consideration.
The first section of the act of 1887 defines the general jurisdiction of the court. On its face it is quite comprehensive. The jurisdiction extends to all claims founded upon the Constitution or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, express or implied, with the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort.
The first proviso excludes jurisdiction to hear and determine war claims, or to hear and determine other claims, which at the time of the passage of the act had been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same. The last proviso is a statute of limitation, but likewise jurisdictional because expressly operative on the jurisdiction.
There is no limitation appearing by this first section which previous statutes formerly imposed operative on a class of persons but not on a class of cases.
The construction of the fourteenth section of the Tucker Act with reference to claims referred to the court by one of the . Houses of Congress has been a matter entirely between this court and those bodies. There is no appeal from any view we may take except in the action of Congress. The words of this particular section apparently do not need in *25 terpretation. It provides “ That whenever any bill except for a pension shall be pending in either House of Congress providing for the payment of a claim again'st the United States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may refer the same to the Court of Claims, who shall proceed with the same in accordance with the provisions of the act approved March 3, 1883, entitled ‘An act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the Government,’ and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy,”
The last section of the Tucker Act repeals such previous statutes as are inconsistent with its provisions. Claims, legal and equitable, whether barred by statute of limitation or not, and gratuities, are authorized to be investigated. There is no limitation. Thus it provides for the investigation of claims for which no remedy has ever been provided. The right of all to be heard by Congress is thus preserved.
But directly bearing upon the present issue, in construing that provision of the Constitution (Art. I, sec. 8) relating to the power of Congress to lay and collect taxes and to pay debts of the United States, in a late case arising under the second section of the Tucker Act, the Supreme Court said respecting the power of Congress to appropriate money:
“ The term ‘ debts ’ includes those debts or claims which rest upon a merely equitable or honorary obligation, and which would not be recoverable in a court .of law if existing against an individual. The nation, speaking broadly, owes a ‘ debt ’ to an individual when his claim grows out of general principles of right and justice; when, in other words, it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor of an individual, although the debt could obtain no recognition in a court of law.
*26 “ * * * Whether the facts existing in any given .case bring it within the description of that class of claims which Congress can and ought to recognize as founded upon equitable and moral considerations and grounded upon principles of right and justice, we think that generally such question must in its nature be one for Congress to decide for itself.” (United States v. Realty Co., 163 U. S., 427.)
There are certain restrictions upon the jurisdiction of this court contained in the act of Márch 3, 1883, which do not „ apply to the act of March 3, 1887. The provisions relating to procedure have been held not to relate to the substantive right. Thus, the Bowman Act governs Tucker Act cases in its provisions as to rules, evidence, defense, and other like things, but not as to the bar of the statute of limitations. (Dowdy v. United States, 26 C. Cls. R., 220). So the effect is that the Tucker Act is not an amendment, in respect to these inquiries, to the Bowman Act. The Tucker Act stands alone as to the fourteenth section except as to procedure.
In every case, whether under the act of 1883 or the act of 1887, the question is what facts are to be found, and the court has a right to exercise a certain discretion in determining whether the facts requested by either party are material for the consideration of Congress.
In dealing with cases in this branch of our jurisdiction the procedure is unlike that of a committee of Congress. The functions of the court are advisory as to facts, but upon an entirely different basis from the report of a committee. The findings of the court do not rest upon ex parte statements, as in the nature of things the recommendations of a committee in a legislative body ordinarily do. The court receives no instructions, but a committee is subject to instruction. The court acts upon no directions, as a committee must if the body for whom the committee is acting directs. Government is represented by counsel before the court under the direction of the Attorney-General, while before a committee of Congress private claims generally have the aid of counsel interested in the claim, but the Government generally has no such aid. No issues are framed before a committee, while in the court pleadings are required and defenses made under rules for the examination and cross-examination of witnesses, with proof for the Government *27 if testimony can be found. Committees may rely upon affidavits (which constitute the lowest form of evidence), which the court never does unless by some provision of law affidavits are made competent. Committees make recommendations, while the court transmits findings consisting of ultimate facts — not the evidence going to establish the facts. The findings of the court may suggest the distinction between a legal claim and an equitable claim; they may show that the claim is neither, but that the matter under consideration is merely a gratuity. These considerations prove to us a clear Congressional intent by the Tucker Act to enlarge the jurisdiction for the claims, legal and equitable, and for gratuities which Congress can constitutionally pay.
That provision of section 14 of the act we are considering expressly directs that the court shall report upon any claim, legal or equitable, including any facts bearing on the question whether the bar of any statute of limitations shoúld be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy. The intent of Congress appears to be clear that no previous act should be incorporated into section 14 to prevent an investigation in cases not provided for by some other statute. With the exceptions noted, a bill providing payment and sufficiently descriptive as to the persons may be considered. Subject to inhibitions upon appropriations such, for instance, as are named in the fourteenth amendment to the Constitution, it seems evident that the intent of the act of 1887 was to grant to either House the authority to refer any claim within the constitutional power of Congress to make an appropriation for the payment thereof.
When the court has once taken jurisdiction, its remaining duty is to find the facts for the information of Congress, to the end that any claim against the Government thus referred may, in accordance with the act, be judicially investigated ; and when the facts so found have been reported and are free from fraud or false testimony (within the ruling of the court in the Hartiens case, contemporaneously decided, post, p. 42) claimants have not only been heard before Congress, but have had their day in court.
*28 Wliere the court has already taken jurisdiction and proceeded to judgment under the terms of some general law, new jurisdiction can not be acquired for the purpose of an investigation and a report of the facts pursuant to resolution under the fourteenth section of the Tucker Act transmitting a bill providing for an appropriation of “ a claim,” legal or equitable, against the United States. (Vincent v. United States, 39 C. Cls. R., 456.) Nor can renewed references under any act invest the court with jurisdiction to consider matters of fact where the report appears to be final under previous reference on the same issues, except as it shall be made to appear on the second reference that competent testimony has been overlooked, or the findings are shown to have been based on false or fraudulent testimony, or were procured through the misconduct of either party. (Rymarkiewicz v. United States, ante, p. 1.) We can not attribute to Congress the intent to assume judicial power. Nor can we attribute to Congress the intent to permit either House to burden the court with subsequent references where it appears that the jurisdiction has once been exercised and where the findings appear to be final, except as stated.
The discussion might be continued, but it seems unnecessary. Nor is it necessary in the endeavor to find the intent to quote proceedings in Congress prior to the adoption of the act of March 3, 1887. The views of individual members in debate and the motives which influenced them to vote for or against its passage can not be used to determine the intent. The act itself speaks the will of Congress, and this is to be ascertained from the language used. (United States v. Union Pacific R. R. Co., 91 U. S., 79.)
This is a claim for money in the Treasury belonging to the claimant. The money, there is the proceeds of captured property.
The suggestion that bills are pending in Congress for the payment of claims for money arising from the proceeds of captured and abandoned property in favor of persons who did not avail themselves within the time prescribed by law for bringing suit, and that these bills will probably result in authorizing the distribution of the funds there ratably among *29 those who may prove themselves entitled to claim the same, is not tenable on this question of jurisdiction. The court must deal with the law as it finds it and not have its action governed by what Congress may possibly enact.
The money belonging to the claimant in this case is the proceeds of tobacco seized in Petersburg, Va., by the military forces of the United States in April, 1865. The net proceeds, amounting to $8,512.89, having been deposited in the Treasury and no part of the same ever having been paid, the findings bearing upon the circumstances of the seizure and the deposit of the amount in the Treasury, will be reported to Congress, together with a finding that the claimant was not loyal, with a copy of this opinion.