Howry, J.,
dissenting from court’s order dismissing petition:
This cause was regularly transmitted to this court for an investigation and a report of the facts to Congress pursuant to a proper resolution under section 14 of the act of March 3, 1887 (set forth in the margin)[1], commonly known as the Tucker Act. The cause was pending here March 3, 1911— being the time of the approval of the “Act to codify, revise, and amend the laws relating to the judiciary.” This last act did not go into effect until January 1, 1912, and contained a provision that the Court of Claims should have jurisdiction to hear and determine (that is, enter judgment) *404 the claims of those whose property was taken subsequent to June 1,1865, under the provisions of a previous act approved March 12, 1863, entitled “An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States,” and acts amendatory thereof where the property so taken was sold and the net proceeds placed in the Treasury, any statutes of limitations to the contrary notwithstanding. On the hearing of a motion to dismiss the present cause for want of jurisdiction to make an investigation and report the majority of the court sustained the.motion on the ground that the remedy given in cases of seizure of abandoned and captured property under the original act mentioned was exclusive; and that the proceeds in the Treasury for captured property are yet held in trust for those who brought suit within the jurisdictional period and established their loyalty and ownership by a decree of this court.
Without hearing any proof or making any investigation whatsoever the majority of the court then proceeded to take jurisdiction of the merits of the present case to the extent of drawing inferences not required by law and conclusions of fact not warranted by the terms of the act referring the bin.
That the claim before the court on which the jurisdiction was thus denied (being alleged to be for cotton taken before June 1,1865, but taken after the passage of the act providing for the proceeds to be placed in the Treasury) could not be refused an investigation appeared for reasons set forth in an opinion by me dissenting from the action refusing jurisdiction to investigate and make report to Congress; and also dissenting from the majority opinion in denying jurisdiction and yet undertaking to report conclusions without considering the testimony and investigating the facts. My opinion shows that—
1. Where jurisdiction is wanting to find the facts under section 14 of the act of March 3, 1887, jurisdiction is also wanting to report conclusions of law as to the nature of the demand under the amendment of June 25, 1910.
2. The Supreme Court has declared that proceeds of captured cotton under the act of 1863 are a trust for the benefit *405 of such as should establish their claim to it, subject to disposition by Congress, and that the act of 1863 did not intend to confiscate cotton seized under it.
3. Ownership of cotton by the Confederate Government requires a conclusion adverse to the claimant.
4. The grant of jurisdiction by section 162 of the Judicial Code-over cotton claims originating after June 1, 1865, does not destroy jurisdiction already existing over claims originating before that date.
5. Jurisdiction to find the facts and jurisdiction to render judgment rest upon separate grants of authority by Congress to this court.
6. Jurisdiction to find the facts under section 14 of the Tucker Act is designed generally for demands outside the jurisdiction of this court to render judgment, but is not inconsistent with such jurisdiction.
7. A right to an appropriation after a finding of facts does not necessarily follow a finding of facts under section 14 of the Tucker Act.
8. Section 14 of the Tucker Act was designed to remedy deficiencies in the Bowman Act in the jurisdiction to find facts for the relief of Congress.
9. Jurisdiction under section 14 of the Tucker Act over claims for net proceeds in the Treasury under the captured and abandoned property act has been directly sustained by the opinion of this court in Chieves v. United States, 42 C. Cls., 21, and in numerous findings in other cases governing the present case. The cases examined and stated.
10. The act of 1868, declaring the remedy of the act of 1863 in captured and abandoned property claims to be exclusive, related to the then existing power to adjudicate such claims.
11. The exclusiveness of jurisdiction to adjudicate claims under the act of 1863 does not affect the jurisdiction to find the facts under the Tucker Act, passed in 1887.
12. Section 14 of the Tucker Act is not«a repeal of the limitation on adjudication in the act of 1863, but a new and general grant of a different jurisdiction, designed to aid the right of petition and relieve Congress from the investigation of facts in private claims.
*406 13. The denial of jurisdiction over claims for proceeds of captured and abandoned property under the act of 1863 is inconsistent with the repeated admission of jurisdiction in other classes of claims for which an exclusive tribunal had been provided before the passage of the Tucker Act in 1887.
14. The Judicial Code reserves all rights in proceedings pending at its passage, and therefore has no relation to the present case.
Í5. The test of the power of the court to find the facts is the power granted to either House of Congress to refer the bill.
The new code does not repeal section 14 of the Tucker Act, because there are no words of repeal and none by implication. On the contrary, the section is substantially reenacted in section 151 of the new codified law. Besides, jurisdiction over the cause now under consideration, for the purposes of preserving testimony and reporting the facts to Congress, was retained by section 299 of the new code, which expressly declares that all suits “ and proceedings for causes arising or acts done prior to ” the time of the taking effect of the new judiciary code “may be commenced and prosecuted within the same time, and with the same effect, as if said repeal or amendments had not been made,” and that the new judiciary act “shall not affect any act done, or any right accruing or accrued * * * fending at the time of the tahing effect ” 'of the new act.
Authorities were cited by the majority to show that the proceeds of captured property now in the Treasury are held in trust for those only who brought suit within the jurisdictional period and established their loyalty and ownership by a decree of the Court of Claims, but that as to all others the title of the United States became absolute. And again, that cotton was a legitimate subject of capture by the national forces.
No one has eVbr disputed since the Supreme Court passed on the matter that cotton was from its character “ potentially an auxiliary” of enemy forces and a legitimate subject of capture by national forces. But confiscation of the proceeds *407 of captured cotton was never the intention of Congress in authorizing the seizure of cotton, and the decisions of the Supreme Court have shown that there has been no confiscation of the proceeds of any such property.
Laying aside the case of Ford v. Surget, 97 U. S., 594, cited by the majority, as having nothing to do with the present issue — because that was a suit on the part of the citizen against a Confederate officer for burning the cotton of the citizen — we come to the privileges of all owners of cotton where the proceeds were placed in the Treasury.
In Young v. United States, 97 U. S., 62, Chief Justice Waite, speaking for the Supreme Court, said:
“Whoever could bring himself within the terms of the trust might sue the United States and recover, but no one else.”
When that opinion was written, there was neither a reversal nor an intimation of a reversal of the decisions respecting the effect of a pardon upon the right of any owner to sue for the proceeds of his cotton in the Treasury except as such an owner’s claim and right to recover had become barred by the two years’ statute of limitations.
In the case of Armstrong's Foundry, 6 Wall., 769, it held that the general pardon granted relieved the owner from the penalty which such an owner had incurred to the United States. In Ex Parte Garland, 4 Wall., 380, the Supreme Court held the effect of a pardon to be such “ that in the eye of the law the offender is as innocent as'if he had never committed the offense.” In United States v. Padelford, 9 Wall., 531, 543, the Supreme Court, by a unanimous opinion, answered the suggestion that the property ay as captured in fact, if not laAvfully; and that the proceeds having been paid into the Treasury the petitioner was without remedy in the Court of Claims, unless proof was made that he gave no aid or comfort to the cause hostile to the United States, by saying:
“ The suggestion is ingenious, but we do not think it sound. The sufficient answer to it is that after the pardon no offense connected with the rebellion can be imputed. If in other respects the petitioner made the proof which, under the act, entitled him to a decree for the proceeds of his property, the law makes the proof of pardon a complete substitute for *408 proof that he gave no aid or comfort. A different construction would, as it seems to us, defeat the manifest intent of the proclamation and of the act of Congress which authorized it. Under the proclamation and the act the Government is a trustee, holding the proceeds of the petitioner’s property for his benefit, and having been fully reimbursed for all expenses incurred in that character loses nothing by the judgment, which simply awards to the petitioner what is his own.”
In Klein's case, 13 Wall., 138, the court (after declaring the intention of Congress and that title to the proceeds of cotton captured and placed in the Treasury was not divested absolutely out of the original owners of the property) said that:
“ The property of the original owner is in no case absolutely divested. There is no confiscation.”
In Pargoud's case, 4 C. Cls. R., 377, the defendants' moved to dismiss the case “ because it is not stated and set forth in said petition that the claimant has at all times borne true faith and allegiance to the Government of the United States, and that he has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the Government of the United States, as required by the twelfth section of the act of Congress to reorganize the Court of Claims, approved March 3, 1863 ”; and the court allowed the motion dismissing the case. The Supreme Court reversed that decision, 13 Wall., 157, holding that it was unnecessary in a claim in the Court of Claims to prove adhesion or personal pardon for taking part against the United States, as the President’s proclamation was unconditional and without reservation.
And in Mrs. Armstrong's ease, 13 Wall., 154, in alluding to the effect of a previous proclamation granting pardon unconditionally and without reservation, the Supreme Court declared that the proclamation “ was a public act of which all courts of the United States are bound to take notice and to which dll courts are bound to gire effect."
In Haycraft v. United States, 22 Wall., 81, the court analyzed Klein’s case (without reversing it) by saying:
“ If a suit was commenced within two years, a pardoned enemy could recover as well as a loyal friend. But the com *409 mencement of the suit within the prescribed time was a condition precedent to the ultimate relief. The right of recovery was made to depend upon the employment of the remedy provided by the act.” (Captured and abandoned property act.)
There are other cases which, like Hay crafts case, hold that the pardon came too late for owners of cotton to avail themselves of the remedy. These cases all relate to the remedy and the effect of the statute of limitations in bar of the remedy under the act authorizing this court to render a judgment under the abandoned and captured property act.
In Brent v. Bank of Washington, 10 Pet., 617, the Supreme Court in declining to take that case out of an established rule said that the act of limitations operated only to bar the remedy, not to extinguish the right, citing with approval Bank v. Donnelly, 8 Pet., 361. In affirming the rule the court said:
“ The legal remedy is barred, but the debt remains as an unextinguished right.”
In Townsend v. Jemison, 9 How., 407, the Supreme Court explains the difference between statutes whose effect is to vest title to property by adverse possession and those which merely affect the remedy. The court said:
“ The rule in the courts of the United States, in respect to pleas of limitation, has always been that they strictly affect the remedy and not the merits.”
An obligation is distinct from the remedy. The obligation to do a thing is derived either from contract or from the act of the parties.
As applied to personal property, where one has had the peaceable, undisturbed, and open possession for the period which under the law would bar an action for its recovery by the real owner, the weight of authority is in favor of the title of the person as against the neglect of a real owner to avail himself of his legal rights. But before this rule can be applied there must be an assertion of ownership on the part of the person who has acquired possession from the real owner. Before time can vest the right the mere possessor of the property can not plead that he has acquired a good title. He must assert ownership before any lapse of time can divest the *410 right of the real owner. As to the proceeds of cotton in the Treasury the United^ States have never asserted ownership, but on the contrary have disclaimed title by those subsequent acts of Congress which applied to all cotton seized in enemy States under which the Secretary of the Treasury was directed to pay on proper proofs.
I have submitted the foregoing observations not because they are strictly applicable to the matter of jurisdiction in the present case, but because the majority of the court have undertaken to make a conclusion (under the act of June 25, 1910). of fact. “ The jurisdiction of a court ca:n never depend upon the merits of a case brought before it; but upon its right to hear and decide at all.” Basso v. United States, 40 C. Cls. R., 202.
An exclusive remedy provided for one owner to have an opportunity to obtain a judgment can hardly be said to be any. remedy at all for another owner whose claim can not be considered for the purpose of obtaining judgment because of the statute of limitations. The words “ exclusive remedy ” Operate for the benefit of that class whose cotton was taken after June 1, 1865, and the proceeds placed in the Treasury. But even as to such persons that class may waive whatever right the new statute gives to obtain judgment and yet proceed to have an investigation and report to Congress under section 299 of the new code.
The words “ exclusive remedy ” relate only to jurisdiction for the purpose strictly of taking a judgment. The investigation and report of a claim have never been considered a remedy until on the report an appropriation is provided by Congress. The mere investigation and report is no remedy at all until Congress gives effect to such an investigation as the basis of a remedy which the legislative power alone may provide at will.
Examine the act authorizing an investigation and report, and we find that there must be a bill providing for the payment of a claim against the United States, legal or equitable, for a grant, gift, or bounty to any person, and the reference of such a bill to the Court of Claims. It is passing strange that if, according to the majority of the court, petitioner has no right to an investigation and a report because the statute *411 of limitations is in the way of any opportunity on bis part to proceed to judgment on a claim.,, jurisdiction yet exists for tlie benefit of any person preferring a claim whether barred by any statute of limitations or not or for donations and gifts to be inquired into and reported to Congress. The discrimination against the individual with a claim in favor of one without a claim is utterly inconsistent and indefensible.
If this, claimant has money in the Treasury he had, according to the Supreme Court, a right to prefer his demand as a proper claim against the Government within the time allowed by law for prosecuting claims. If barrel, he yet had a right under section 14 of the Tucker Act to an investigation and a report, because the statute of limitations only affected the exclusive right given by law to get into the court for the purpose of taking a judgment. But, according to the several decisions of the Supreme Court, the remedy only has been taken away but the right of the claim is yet unex-tinguished.
Universal amnesty without restrictions or qualifications of any kind conferred the right on the disloyal by the proclamation of the President of July 4, 1868, to ask of this court judgment for the proceeds of cotton traced to the Treasury. But at the time of the proclamation of 1868 the right to prosecute had become barred by the statute of limitations for those persons who had been unable^up to the time of the proclamation to prove loyalty. Though the proclamation came too late-to do the disloyal any good for the purpose of obtaining judgment until Congress should remove the bar, they yet had the constitutional right of petition to Congress for relief. That right was as perfect July 4, 1868, as it is now. It can not be taken away even by the legislative body. Still less can this court, or any other court, take away a right of this character because of the fundamental law. .
In Ohio Life Insurance Co. v. De Bolt, 16 How., 416, the Supreme Court said that “ no one legislature can by their own act disarm their successors of any of the powers or rights of sovereignty confided by the people to the legislative body unless they are authorized to do so by the Constitution.” Congress may refuse to send cases to this .court for investigation, but can not refuse to receive petitions for relief. But *412 Congress have not repealed the act which authorizes the present investigation, whether the demand be for a claim against the United States or for something else less than a claim.
The authority to investigate and report claims by section 14 of the Tucker Act without reference to any statute of limitation was the result of the decision of the Supreme Court in the case of Ford v. United States, 19 C. Cls. R., 519; 116 U. S., 213. When that decision was rendered under the Bowman Act the fourteenth section had no existence. It came into life the next year after the decision in Ford’s case was finally made. All that Ford’s case did decide was that in 1886 the claim was not within the jurisdiction of this court under the law as it then stood; that is, that it was not within the jurisdiction because of the bar arising from the statute of limitation of six years prescribed by section 1069 of the Revised Statutes. The Supreme Court merely said that it was unreasonable “ to suppose that Congress intended to invest one of its branches with authority to suspend a generad statute of limitation; that every claim cognizable by the Court of Claims must be determined with reference to the limitation prescribed for claims of the class to which it belongs, unless Congress by statute otherwise directs.” Then the court added that reference (under the law as it then stood) yjould not itself entitle the claimant to a judgment because of the limitation, and that—
“ It is undoubtedly within the power of Congress to place claims referred to the court by the Senate or by the House of Representatives on a better footing than other claims by providing that they may be determined upon their merits without reference to lapse of time or any previous bar by lim-itationsF
Nobody ever claimed that this court could render a judgment by virtue of a Tucker Act reference unless the claim had become the subject of suit within the six years’ bar prescribed by the other sections of the act of March 8, 1887. But section 14 of this Tucker Act referring a bill requires the court to investigate and report ultimate facts to Congress in all cases, notwithstanding the bar of the period of limitation.
*413 The only lawful course for the court to take by express command of the law is to make investigation, where the claim can be liquidated, to include any fact bearing upon the question whether the bar of any statute of limitation should be removed. The section providing the jurisdiction interprets itself and can not be destroyed by construction. The fact that the majority have undertaken to support their denial of jurisdiction to investigate and make a report to Congress by a Supreme Court decision wholly without application demonstrates the weakness rather than the strength of the position taken in refusing to examine the merits and report the same to Congress. The interpretation given by them only confuses a practice perfectly plain until this cotton claim came along— a practice which the court, as now constituted, aided to establish as final and entirely .uniform until now sought to be changed.
The opinion of the majority undertakes to harmonize the purpose and scope of the Tucker Act by the recent amendment to section 14 which requires the court to make an investigation and report to Congress “ together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity, against the United States.” If the claim at bar is a gratuity, the jurisdiction is apparent. If it is a claim of a legal or equitable character, the jurisdiction is also clear. If the United States yet have the proceeds of this owner’s cotton, the conclusion made by the court as a matter of law, or of fact, or as a mixed question of law and fact, is erroneous, because the statute of limitations has not extinguished the right. If the United States hold the proceeds and to that extent have received a benefit, restitution of the proceeds rests with the Government because of the advantage ik did receive and which was never designed to be taken permanently from any owner, except as that owner was shown to be a hostile government. Under the amendment relied on the court is constantly stating to Congress that where a private owner’s property has been taken a claim now for its value is equitable because of the benefit originally received by the United States. The “ harmony ” is too inharmonious to be consistent or to be made to rest upon sound reasons.
*414 Summarizing the objections taken to entertaining jurisdiction, it would appear that the refusal to do so has this effect:
(1) It abridges as far as this court can abridge the citizen’s constitutional right of petition, because there is practically no other method provided for the investigation of claims barred by limitation except under the fourteenth section of the Tucker Act.
(2) It discriminates against claims (where the United States have received a benefit) in favor of gifts, grants, and' bounties.
(3) So much does the refusal discriminate in favor of the investigation of bills providing for donations only, the majority omitted to notice that at the last term the court rendered a unanimous opinion in the case of Atlantic Works, 46 C. Cls. R., 60, where it appeared that though it was admitted by the Atlantic Works that the matter before the court was an application for a donation, yet the court decided that jurisdiction must be taken if the resolution transmitting the bill was proper. That case is yet before the court to be investigated with the right stated by the court in its opinion to disclose by findings whether the bill had brought to the court an application for a “ donation ” or for a “ claim ” against the United States.
(4) It reverses the Chieves case, 42 C. Cls. R., 21, and numerous cases since then, thereby breaking down the principle of stare decisis.
(5) It misconstrues Vincent's case, 39 C. Cls. R., 456, because in that case it appeared that a claimant had once had his day in court on an alleged claim under an act then being administered and where the case had been dismissed because jurisdiction under the act was clearly wanting because of the hostility of an Indian tribe; and also because this court said that jurisdiction would attach had the resolution covered the reference of a bill providing for a gift.
(6) It reverses the action taken in Vincent’s case by almost immediately investigating and reporting under the Tucker Act dismissed Indian depredation claims to Congress (in this writer’s absence) as “ claims.”
*415 If anything had been said in argument or intimated from any source that the court should take jurisdiction regardless of the law, I could understand why the case of a negro soldier begging for reinstatement in the Army after his alleged misconduct at Brownsville should be mentioned as authority to prove that jurisdiction is not a matter of sympathy or favor, as was said by the Supreme Court in Reid's case, 211 17. S., 539. • Later, the occasion may be taken by ,me to say something further about courts sometimes taking jurisdiction when they should not, but for the present the subject need be no further discussed.

 “ Sec. 14. That whenever any bill, except for a pension, shall be pending in either House of Congress providing for the payment of a claim against the united States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may refer the same to the Court of Claims, who shall proceed with the same in accordance with the provisions of the act approved March 3, 1883, entitled ‘ An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government,’ and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim, or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed, or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity, against the United States and the amount, if any, legally or equitably due from the United States to the claimant.”