Howby, J.,
dissenting:
Jurisdiction to investigate and report this matter being denied by the majority of the court, it is proper to say that, before stating my reasons for dissenting, all the facts well pleaded should be recited.
Petitioner’s intestate had entered into a contract with the Government to furnish beef to the Red Cloud Indian Agency. 'A large number of cattle had been collected and herded by the' intestate pursuant to the contract near the place of distribution when the defendant bands of Sioux seized and drove off a considerable number of the cattle. The claim, being presented to the proper office, was investigated according to law and, upon the proofs, was allowed by the Secretary of the Interior and reported for payment to Congress. At this stage of the matter the act of March 3, 1891, 1 Supp. R. S., 913, providing for the payment of claims arising out of the depredations of Indians, was passed. Petitioner’s intestate seems to have had no knowledge of this act, and having gone from his residence in Kansas into another and more distant State from the place of the depredation, the belief prevailed that Cox, the original sufferer, had died. Letters of administration were then taken out upon the estate of Cox and the administrator brought suit in this court under the Indian depredation act for the loss of the cattle. While the action was pending petitioner’s in-, testate notified the attorney in charge of the cause that he was alive and presiding as a judge in a court in Texas. The original suit having then been dismissed on the ground that the administration was void, Congress was petitioned for relief. Then followed the bills providing payment, together with the resolutions from Congress directing investigations in this court under the provisions of section 14 of the act of March 3, 1881, commonly known as the Tucker Act, 24 Stat., 505.
When the case came on for hearing under the second reference the following indorsement was made as the action of the court'on the Government’s motion to dismiss, to wit: *266 “ Within motion to dismiss allowed and petition dismissed on authority of Vincent, 39 C. Cls., 456, and Chieves, 42 C. Cls., 21.” Thereupon this writer prepared the following dissent to the action of the court:
“ The majority do not sustain their action by any opinion, but rest the decision not to investigate upon the authority of Vincent v. United States, 39 C. Cls. R., 456, and the case of Chieves v. Same, 42 ibid., 21.
“ The case of Vincent, supra, having been reversed by the court’s own action, can not be considered as authorizing the refusal to proceed now. Forsyth v. United States, No. 9982, 15 Cong. Rep., 171; McWorthy v. Same, No. 10003, 15 ibid., 175; Allman v. Same, No. 9999, 15 ibid., 177; Rogers v. Same, No. 10005, 15 ibid., 179; Thompson v. Same, No. 10006, 15 ibid., 181. (The writer was not present when these last cases were investigated by the court and reported to Congress.)”
These last-named cases were all subsequent to Vincent’s case and were thought by the court on review and reflection to be the law. If these later cases were decided right the decision in Vincent’s case was not justified in that statement that a claim under a special jurisdictional act coming distinctly as “ a claim ” could not be investigated. If the true rule be that the court is without jurisdiction to investigate a bill referred where the matter transmitted is designated distinctly as a claim against the Government, then the court broke the rule in discriminating against a large class by taking jurisdiction in favor of what the court says are the claims last mentioned, and now denying jurisdiction to others of the same class.
Vincent’s case was refused investigation because the bill had referred the matter as a claim against the United States in a legal sense; that is, as a “ debt ” against the Government. As a debt the claim was not within the act of 1891 because the loss was recognized as having been occasioned by persons hostile to the Government. When the want of amity was disclosed the court had no warrant by the terms of the act conferring jurisdiction to enter judgment against the United States because the Government had never guaranteed losses arising from the acts of Indians in hostility. That was all. *267 But the court was careful to say that, as an appeal to the bounty of the Government, jurisdiction could attach. The court as it is now constituted unanimously confirmed this view only recently for the investigation and report of cases referred under the fourteenth section of the act of March 3, 1887, sufra, and even went further. We said we could do this where the bill referred a matter called “ a claim ” when the facts disclosed it was not a claim in a legal sense, but a gratuity. 46 C. Cls. R., 57.
In Atlantic Works v. United States, 46 C. Cls. R., 61, the court, without division, stated the rule to be as follows:
“ Though the bill referred fixes the character of the ‘ claims ’ to be investigated, it does not follow that the court’s findings will disclose the alleged claims to be such demands against the United States as are legal or equitable. The fourteenth section of the act of March 3, 1887, supra, does not restrict the action of the court so to limit the investigation as to make findings disclose legal or equitable claims against the Government. The court is ‘ to find the facts ’ on every bill properly referred, and under the amendment of June 25, 1910, report ‘ conclusions ’ which may show the bill to be for a mere gratuity.”
Then followed the statement in that case that an independent investigation of all the facts material to a full understanding of the merits of the matter referred was meant, so that the conclusions of the court should unmistakably show the nature and character of the proposed measure, to the end that Congress should not be left in doubt in framing legislation for relief or want of relief on the report.
The Chieves case, 42 C. Cls. R., 25, is without application to the present matter, because in that case it was merely held that where the court has once taken jurisdiction and in its exercise has made findings, new jurisdiction could not be acquired except as there stated. As, in the matter now before the court, jurisdiction was never taken far enough to render judgment, but was dismissed for want of power to consider the merits of the matter, references can not be made under any act so as to invest the court with jurisdiction to reconsider “ on the same issues.” The case here is not presented for judgment under the Indian depredation act, and, *268 if it were, no judgment could be rendered. The issue now is not the same as when plaintiff sought judgment under an act which, if the proof established a loss, warranted a judgment. The extent and scope of the court’s ruling in the GMeves case related strictly to findings of fact; and we there expressly said that there was no limitation on the power of the court tp provide for the investigation of claims for which no remedy has ever been provided because the right of all to be heard had been reserved by Congress.. How can Congress determine what to do with demands where the claimant has lost his right by misadventure or the statute of limitations if the right ever existed ? And how can Congress determine the matter of appropriations in their undoubted right to provide for the payment of gratuities at discretion unless the court will discharge its duty and report facts wherever either House of Congress shall request it by resolution? The only answer is, when we throw these cases back upon the lawmaking body, committees must discharge the functions of this, the only court empowered to assist Congress in such matters, or the citizen must be deprived of any kind of a hearing.
The error in refusing to find the facts in the matter under consideration lies in confusing the duties of the court under the first section of the act of 1887 and the requirements imposed by the fourteenth section of that act. Sections 1 and 14 confer distinct and different powers and provide different remedies in part, quite independent of each other. As some misunderstanding exists as to what these powers are, it is well to again make plain the authority of the court to enter judgment under the one section and the power of the court to make findings with conclusions of an advisory character under another section.
These distinct jurisdictions conferred by the Tucker Act were continued in force by the new Judicial Code.
Jurisdiction exists to enter judgment upon the petition of claimant if the jurisdictional bar of six years does not prohibit.
Jurisdiction to find the facts by congressional reference exists without regard to the bar of any previous statute.
The two jurisdictions are linked together by the right to render judgment in cases coming to the court by congres *269 sional reference of the classes in which judgment can be rendered upon the claimant’s petition.
The system is complete, as an examination of the first, thirteenth, and fourteenth sections of the Tucker Act will show. The court has constantly been acting upon this interpretation and is continuing so to do.
Section 151 of the present code is a reenactment, with some amendments, of section 14 of the Tucker Act, because the court is directed by that section to render judgment or decree in claims referred like those coming under the general jurisdiction.
Jurisdiction, says the Supreme Court, can not be defeated by implication.
Where a statute creates a right and provides an exclusive remedy to be enforced in a particular way or by a special tribunal, claimants are left to the remedy given by the statute which creates the right. Examples of existing cases of this character are generally found in the revenue laws. But where a petitioner does not seek' a decision which in its nature is final and does not ask for a judgment and could not obtain one if he did, there is no law to prohibit him from applying to Congress for relief through the Court of Claims on a resolution transmitting a bill by either House of Congress for that purpose. The relief may never come, as the whole matter rests with Congress to determine after the facts have been found and report made by the court to Congress.
■Where a petitioner seeks a final decision through the agency of a special tribunal and is denied relief, such a claimant can go to Congress and upon the introduction of a bill for his relief the House where the bill is presented has the right to transmit the same to this court for investigation. Thus, in Royse et als., 47 C. Cls., 333, the court exercised jurisdiction very recently where it appeared that the Secretary of War, being vested with exclusive jurisdiction under the act of February 28, 1867, 14 Stat., 417, had decided adversely in a class of more than 2,000 cases.
Befusal to investigate and report the facts to Congress in the present matter restricts the power of Congress. The *270 consequent investigation by the court (when a bill is transmitted) can not be restricted; and the power of the court is as broad as the language contained in the fourteenth section of the Tucker Act. Hence, it is not merely the province but the duty of the court, as I view it, to report the facts if, after an investigation at the expense of the claimant in proving his case, a petitioner desires to ask Congress to determine the measure of such relief as Congress shall see fit to extend. Refusal to investigate and report is discriminative, because contradictory to many of the court’s decisions; and being arbitrary, can only lead to a conflict between the court and the lawmaking power in all those cases where Congress requests information and can not obtain it. As the fourteenth section of the Tucker Act has never been repealed by the legislature, the court is without authority to refuse to act.
On such material proofs as the parties may present, the court should make findings of fact and report along with these such conclusions as are proper, under the act of June 25, 1910, 36 Stat., 837.
From the foregoing opinion my brethren seem to have abandoned their reason resulting in the order first determined upon to dismiss, on the authority of Vincent, 39 C. Cls. R., 456, and Chieves, 42 ib., 21. As the matter now stands, jurisdiction is denied without the statement of any reason for refusing to proceed, which gives the action of the court the appearance of arbitrary .action. But presumably the present order to dismiss arises out of the action taken in 1906, that the court is without jurisdiction because the claim presented for investigation arose out of a loss caused by the depredation of Indians, and that such a claim can not be now inquired into under the Tucker Act, inasmuch as the liability, if any exists, is primarily against Indians and not against the United States, except as guarantors. That reason is insufficient to defeat jurisdiction.
Congress have yet an interest in the matter, not merely for the United States, but likewise because the administrative control of the Government yet exists over the tribal property of tribal Indians. Stephens v. Cherokee Nation, 174 U. S., *271 488; Cherokee Nation v. Hitchcock, 187 ib., 294; Wallace v. Adams, 204 ib., 423; Gritts v. Fisher, 224 ib., 648. The object in view evidenced by the resolution of the Senate is the inception of an assertion of a possible property right (for the payment of which Congress must judge), not only against the tribe committing the depredation, but against the United States. The circumstances of the loss are matters which either House of Congress is entitled to know by means of an investigation,, because section 14 of the Tucker Act expressly provides:
“Whenever any bill, except for a pension, is pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty to .any person, the House in which such bill is pending may, for the investigation and 'determination of facts, refer the same to the Court of Claims, which shall proceed with the same in accordance with such rules as it may adopt and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or lach.es in presenting such claim or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.”
From an unbroken line of authorities with respect to the discretion of Congress relating to Indian annuities and the right of the lawmaking power at any time to. continue the guaranty of the Government for the payment of any kind of a constitutional claim, it is equally the prerogative of any Congress to direct the investigation of an Indian claim and especially an Indian claim which the Government has by law created an obligation on its part to pay, either from the Public Treasury or from the trust funds of Indians. One Congress has not attempted to bind succeeding bodies against an exercise of such a right.
*272 This court has twice decided that a statute of limitations, though it may bar an action against the District of Columbia, can not preclude either one of the Houses of Congress from referring a bill under the Tucker Act to the Court of Claims for investigation where liability primarily originated against the District of Columbia. Wilkes v. United States, 43 C. Cls. R., 152; Mackey v. Ib., 47 ib., 121. The reason is clear as the claims in the two cases mentioned were against the United States as well as against the District.
This opinion does not go to the extent of saying that after an investigation is hald that there is any duty imposed on Congress to pay an Indian depredation claim which has had no hearing because of laches or misfortune or that as a matter of expediency or public policy that claims for the depredations of Indians be opened for investigation by references under the Tucker Act. These are matters for Congress alone to determine. But whenever Congress shall see fit to refer a claim of any kind to this court for investigation which those bodies can rightfully pay from the Public Treasury, or can pay from the annuities of Indians (where the case has never had a hearing), the court can not arbitrarily refuse to investigate a bill properly referred under the act of 1887.
The present case may have- no merit. The court’s action precludes any statement either of merit or want of it. But petitioner is entitled to an investigation to determine the matter of merit on such competent proof as the parties may present. If the claim has had no hearing because of misfortune or neglect, the court should investigate and report: (1) Whether at the time of the alleged depredation the Indians were in amity with the United States; (2) the amount of petitioner’s loss, if any; (3) the matter of laches with such circumstances as the proof may show to excuse the petitioner for not having presented the claim within the period allowed by law under the act of March 3, 1891, 26 Stat., 851.
The differences respecting the right of citizens to have old claims investigated by this court as Congress may direct, and the difficulties incident to obtaining appropriations after *273 the court shall have made findings and reports to Congress pursuant to the exercise of jurisdiction under section 14 of the Tucker Act, will probably never be solved under the present system. The removal of the bar of the statute of limitations by Congress at the outset in meritorious cases attended with the investiture of power in the Court of Claims to render judgment (with the right of appeal as in other cases) would be a distinct advance in the interests of justice as well as a great relief to Congress. Could a system of judicial investigation be substituted for much of that which now obtains under section 14 of the act of 1887 without repealing section 14 for extremely doubtfhl rights and all gratuities, much vexatious and unnecessary delay would be obviated for many classes of claims which the lawmaking power can not only constitutionally pay but of right should pay, inasmuch as in the actual practice of appropriating money for the relief of citizens the Government is known to be more generous than just.
Distasteful as it may be to any court and unsatisfactory as it sometimes is to the judge of a court merely to investigate, find, and report facts to a lawmaking body with conclusions not resulting in judgment, it is nevertheless a high privilege to advise a lawmaking body. Parliaments have gone so far as to refer disputed questions (respecting their own privileges even) to courts in England of high authority, and the duty of reporting has never been denied. In one celebrated case a court declined to “ determine ” the issue, but did tell Parliament the rule of law prevailing in the courts of West-minister upon which as judges the court said they would act could the matter referred be “ adjudged.” (4 East., 29.)
The early cases of Hayburn, 2 Dall., 409, and Ferreira, 13 How., 40, providing commission work for United States courts, have been followed by numerous acts creating special commissions and imposing on courts the duty of exercising quasi judicial functions and making reports to Congress of the results oí examinations in cases of private claims against the United States. The act establishing the Court of Claims was the culmination of a system by means of which eminent authority has declared rightful claims against the Govem *274 ment might be established and those not founded in justice promptly driven from the portals of Congress.
With deference to the majority it only remains to say that the Supreme Court of the United States has declared, 163 U. S., 444, that the decision of Congress in the appropriation of money for the payment of a claim founded upon equitable and moral considerations and grounded upon principles of right and justice must in its nature be a question for Congress alone to decide without review by the judicial branch of the Government. Section 14 of the Tucker Act is an extension of the underlying purpose which brought the Court of Claims into existence to relieve Congress from the necessity of investigating claims, and after 25 years of practice and procedure it is now too late for the court to refuse to investigate and report findings to Congress on any claim where the same can be liquidated, together with “ any facts bearing upon the question whether the bar of any statute of limitations should be removed or which shall be claimed to excuse the claimant from not having resorted to any established legal remedy.” It may be irksome to the judge having to do this kind of work and it may happen sometimes that a court so engaged (with commission business as a side issue) may not look with favor upon an appropriation for a particular claim. This affords no reason for the law as we find it in section 151 of “An act to codify, revise, and amend the law relating to the judiciary,” 36 Stat., 1135, to be superseded by any court.